SABRINA KAVENY, Respondent, *v.* THE CITY OF TROY, Appellant.

108  571
111  494
108  571
121  151
108  571
130  191
108  571
159  505
j 159  506

A municipality is not responsible for the construction or sufficiency of the eaves of buildings upon the land of individuals adjoining its sidewalks, and is not bound to prevent the formation of ice from the drip of a roof upon a sidewalk; nor is it bound to the exercise of unreasonable, persistent and extraordinary diligence, during freezing weather, to remove ice formed from natural causes. It is simply bound to keep sidewalks reasonably clean and safe.

In an action brought to recover damages for injuries resulting from a fall upon the sidewalk of one of defendant's streets, it appeared that at the time of the accident the sidewalk was covered with ice. There had been, for a month prior to the accident, severe cold weather, marked by snow storms, making it difficult to keep the sidewalks clean, and all over the city they were slippery and dangerous from packed and frozen snow and ice. The sidewalk where the accident happened had been regularly cleared of snow within reasonable time after it had fallen, but the successive thawing and freezing, with occasional rain, had kept the surface of the sidewalk coated with ice. For more than ten days preceding the

accident the mercury had been below the freezing point. Water from the eaves of a piazza of a building fronting on the sidewalk sometimes overflowed the eaves-trough, dripped down upon the sidewalk and then froze. The day before the accident it had snowed in the morning, rained in the afternoon and frozen at night, forming a new coating of ice all over the sidewalk. *Held,* that the evidence failed to show that the accident was the result of any actionable negligence on the part of the city, and that a refusal to nonsuit was error ; that, although the drip from the eaves may have added to the ice upon the sidewalk, it could not be said to have itself caused the injury, and if it did the city was not bound to remove it and so was not liable.

*Todd* v. *City of Troy* (61 N. Y. 506); *Pomfrey* v. *Village of Saratoga Springs* (104 id. 459), distinguished.

(Argued January 26, 1888; decided March 6, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 2, 1885, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for injuries resulting from a fall upon a sidewalk of one of defendant's streets, which sidewalk plaintiff alleged defendant had negligently permitted to become dangerous on account of an accumulation of snow and ice thereon.

The material facts are stated in the opinion.

*R. A. Parmenter* for appellant. Plaintiff should have been nonsuited because the evidence failed affirmatively to show that she exercised any care or prudence on the occasion in question, but did show that her own neglect and inattention directly contributed to the result. ` (*Palmer* v. *Dearing,* 93 N. Y. 7.) It would be unreasonable to require the city authorities to remove the ice during such cold weather as had prevailed. They had the right to wait for a thaw. (*Taylor* v. *City of Yonkers,* 105 N. Y. 202, 206.) Negligence against the city could not legally be imputed by reason of the existence of the conductor on the piazza. (*Moore* v. *Gadsden,* 93 N. Y. 12–16.) The court erred in admitting evidence that the policemen of the city patrolled this street in front of Congress Hall.

(*Rehberg* v. *Mayor, etc.,* 91 N. Y. 137; chap. 328, Laws of 1880, as amended by chap. 76, Laws of 1881; § 34, chap. 410, Laws of 1882; *Maximilian* v. *Mayor, etc.,* 2 Hun, 263; affirmed 62 N. Y. 160.) The statutory duty imposed upon the police of the city of Troy in the enforcement of ordinances or resolutions of the common council is limited to those which are "applicable to police, health or criminal procedure." (§ 26 of chap. 328, Laws of 1880.) Police officers appointed by the city are not its agents or servants, so as to render it responsible for their unlawful or negligent acts in the discharge of their duties. The municipal corporation in all these cases represents the state or the public; the police officers are not the servants of the corporation, and hence the principle of *respondeat superior* does not apply. (Dillon on Mun. Corp., § 773; *McKay* v. *City of Buffalo,* 9 Hun, 101; affirmed 74 N. Y. 619; *Birch* v. *Hardwicke,* 32 Am. Rep. 640; 39 id. 771; 71 N. Y. 588; 11 Hun, 439; 70 N. Y. 459; 46 N. J. Law Rep. 157; *Smith* v. *City of Rochester,* 76 N. Y. 506; *Woolbridge* v. *Mayor, etc.,* 49 How. 67; *Lorillard* v. *Town of Monroe,* 11 N. Y. 392.)

*James Lansing* for respondent. The fact that rain had fallen the night before and frozen, did not relieve the defendant from its liability for the previous dangerous accumulation of ice and snow upon the walk. (*Kinney* v. *City of Cohoes,* 16 W. Dig. 206; 100 N. Y. 623; 3 N. E. Rep. 189; *Lowhouse* v. *City of Buffalo,* 22 W. Dig. 49; *Evans* v. *City of Utica,* 69 N. Y. 166; *Goodfellow* v. *Mayor, etc.,* 100 id. 19; *Bullock* v. *Mayor, etc.,* 99 id. 654.) Mere knowledge of an obstruction previously obtained does not necessarily show that plaintiff noticed it at the time of the accident, and if she did not then notice the obstruction, whether she was guilty of negligence or not, was a question of fact for the jury. (*Pomfrey* v. *Village of Saratoga Spa,* 34 Hun, 607; *S. C.* 104 N. Y. 459; *McRichard* v. *Flint,* 20 W. Dig. 328.) The jury having found by their verdict upon conflicting evidence that the plaintiff was injured solely through the negligence of the

defendant, and the General Term having affirmed the judgment entered thereon, such determination is conclusive upon this court. (Code, § 1337; *Quincy* v. *White*, 63 N. Y. 375; *Carman* v. *Pultz*, 21 id. 547.) In reviewing the determination of the trial court upon the facts, this court is confined to the inquiry whether there is any evidence to sustain it. (*Reynolds* v. *Robinson*, 82 N. Y. 103, 106; *Standard Oil Co.* v. *Am. Ins. Co.*, 79 id. 506.) When the police force of a city .is charged by statute with the duty at all times to remove nuisances in public streets, and to enforce the ordinances of the common council of the city, notice to its police of an obstruction or defect in the street, contrary to its ordinance is notice to the city. (Ordinance of Troy, passed January 20, 1881; also § 13, ordinance passed 1838; Laws of 1880, chap. .328, §§ 26, 46; *Rehberg* v. *Mayor, etc.*, 91 N. Y. 137; *Lind* v. *Mayor, etc.*, 49 Supr. Ct. R. 126; *Twogood* v. *Mayor, etc.*, 102 N. Y. 216; *Ehrgott* v. *Mayor, etc.*, 96 id. 264; *Bailey* v. *Mayor, etc.*, 3 Hill, 538; *Barnes* v. *District of Columbia*, 91 U. S. 540; *The China*, 7 Wall, 53.)

FINCH, J. The general facts of this case bring it within the doctrine of *Taylor* v. *City of Yonkers* (105 N. Y. 202). A month of severe weather, marked by storms of snow and a freezing temperature, had taxed to the utmost the ability of householders to keep their sidewalks clean, and all over the city and in every locality they were slippery and dangerous from packed and frozen snow and the formation of ice. In front of Congress Hall the walk had been regularly cleaned of snow, which was removed or swept off within a reasonable period after it had fallen; but the successive thawing and freezing, varied occasionally by rain, had kept the surface of the sidewalk very generally coated with ice, from the action of natural causes and the rigor of the climate. Upon this sidewalk the plaintiff slipped and fell and was seriously injured. These facts, however, do not establish a liability on the part of the city. They disclose no violation of the rule that the duty of the corporation is to keep the sidewalks reasonably

clear of ice and snow. Something more than the presence of ice due to the results of a low winter temperature must be shown to make the city chargeable with negligence. The fact that for more than ten days preceding the accident to plaintiff the mercury had been below the freezing point was established without contradiction, and that the city did not accomplish impossibilities or display unreasonable and extraordinary diligence furnishes no ground of liability.

But to meet the emergency of this doctrine the plaintiff sought to show other facts from which the negligence of the city could be inferred and to bring the case within the scope of *Pomfrey* v. *Village of Saratoga Springs* (104 N. Y. 459); and the earlier case of *Todd* v. *City of Troy* (61 N. Y. 506). There were two conductors leading down from the eaves of the hotel. That on the west end, concededly, had nothing to do with the case, for its discharge or overflow was beyond the locality of the accident, and at a point which the plaintiff had not reached. The conductor on the east end and the gutter leading from it were sometimes wholly or partly frozen, and the water passing down would occasionally flow over upon the sidewalk and run down along the curb-stone. The walk descends toward the west and also slopes toward the street gutter. The two grades would naturally carry the water, and so the resultant line of ice, at an angle from the east corner of the building and towards the street curb. It is, therefore, not strange that no proof is found in the case that the ice upon which plaintiff slipped and fell was in any manner the product of the conductor, or that the water from that source made the ice existing at the point of the accident. That point was at least eleven feet from the east conductor, and there is no proof that water from the latter reached that locality. In *Todd* v. *City of Troy* (*supra*), the ice which caused the injury was the product of water from a conductor which was gathered into a tub and, overflowing, spread along and froze upon the sidewalk and formed a ridge or obstruction upon which the plaintiff fell. We need not say now whether that case should be followed to its full extent, or

beyond its own peculiar circumstances, for here there is no proof that the plaintiff slipped upon ice formed from the discharge of the east conductor. On the contrary the evidence is clear that she did not.

But the plaintiff showed that water from the eaves of the piazza sometimes overflowed the channel provided for it on the roof, and dripped down upon the walk at the second post, near which the plaintiff fell, and there froze and became ice. Of course, in a severe and long continued frost, eaves-troughs will fill with ice and conductors freeze, and with a thaw or a rain icicles will form and water drip to the sidewalk and freeze. The city is not responsible for the construction or sufficiency of the eaves upon the property of individuals. It is not bound to repair them if out of order, and has no authority to directly interfere with their construction. No possible vigilance or care, in a large city and in our climate, would avail to prevent such results. The common good and general convenience sometimes brings with it a trace of seeming hardship to individuals. The duty of the municipality is to keep the sidewalks reasonably clean and safe. Snow can be removed without serious difficulty, and where a village permitted it to accumulate on the walk from the slide of an adjoining roof, until it formed a positive and dangerous obstruction to travel, we held in the first of the cases above cited that the city was liable; not, however, because the snow fell from an illy contrived roof, but because having fallen and impeded passage, the corporation did not cause its removal. But ice from the drip of a roof is a different matter. In severe winters it is difficult to remove it. Unreasonable, persistent and extraordinary diligence during the prevalence of freezing weather, would alone be adequate to the emergency. Must the city every day chop it off wherever through miles of streets the difficulty occurs? Is that a reasonable requirement?

The plaintiff's case, however, failed at another point. This sidewalk, through its whole extent for weeks before the accident, was coated with ice formed from natural causes, and which the city could not reasonably be required to remove,

and was not required to remove. The accident occurred on the twenty-second day of January, when the thermometer, in the morning, stood at twenty above zero, at midday twenty-seven above, and in the evening at nineteen above. The day before snow fell in the morning; turned into rain at half past three o'clock P. M., and stopped at five o'clock P. M. The snow fall was four inches, and the melted snow and rainfall combined was twenty-five hundreths of an inch. The freezing of the night and the next day could not have failed to form a new coating of ice, and if, on the morning of the twenty-first, the walk had been utterly free from snow and ice, the latter would have formed and made the whole walk slippery. Doubtless the new ice came upon the old ice, and possibly some addition was made to that from the drip of the eaves, but it cannot be said, upon the evidence produced, that the plaintiff would not probably have fallen, if not a drop of water had come from the eaves, or that the freezing of that drip was the proximate cause of her fall. Abundant reason and explanation existed in the conceded operation of natural causes, and the jury, as we have heretofore said, were not at liberty to guess at or speculate upon a possible ground of action against the city. We do not know, and it is not possible to say from the proof, that plaintiff slipped upon ice formed from the drip of the eaves. Ice was all over the sidewalks from natural causes and where no such drip existed. That ice, the city, as we have held, was not bound to remove. Are we nevertheless to say that it was required to remove a new coating formed from the freezing of the drip, and was negligent for not doing so? The plain truth of the case, when divested of all artificial reasoning, is that a natural cause of the accident existed for which the city was not responsible, and a possible concurrent cause from dripping eaves, may have joined in making the ice, but cannot be said to have itself caused the injury. If it did, the city was no more bound to remove that new coating than the layers beneath. The motion for a nonsuit should have been granted.

SICKELS — VOL. LXIII.   73

For these reasons the judgment should be reversed, and a new trial granted, costs to abide event.

All concur.

Judgment reversed.