JAMES THOMPSON, Appellant, *v.* THE VILLAGE OF SARATOGA SPRINGS, Respondent.

*Negligence — a village suffering a ridge of ice formed by drippings from a bay window to remain on a sidewalk for ten days.*

Proof that water dripping, day after day, from snow melting on the roof of a bay window, to a sidewalk, by freezing thereon created a ridge of ice on the sidewalk from four to five inches thick in its deepest part and sloping off to nothing in the middle of the walk, and that this ridge, because of cold weather, had existed at least ten days before a light fall of snow, immediately after which a foot passenger slipped upon it and was injured, is sufficient to require the submission to the jury of the question whether, in view of all the circumstances under which the ice had formed, the length of time it had existed, the means the village had of discovering it, and its ability to remove it with reasonable effort, the village was not negligent.

APPEAL by the plaintiff, James Thompson, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Saratoga on the 3d day of February, 1897, upon the dismissal of his complaint directed by the court after a trial at the Saratoga Trial Term.

*James T. Brusnihan* and *T. F. Hamilton*, for the appellant.

*A. W. Shepherd* and *J. F. Swanick*, for the respondent.

PARKER, P. J.:

The obstruction which it is claimed was the cause of the plaintiff's injury and which existed upon the sidewalk in question, was formed by water dripping from the eaves of the bay window adjacent to the

walk and freezing to the walk. It dripped from day to day as the snow melted upon the roof of the window, and, by freezing, created a ridge of ice on the walk from four to five inches thick where it struck the walk, sloping off to nothing in the middle of the walk, a distance of two or three feet. Such ridge had continued there for ten days or two weeks before the plaintiff fell thereon, and the question is presented, whether the jury might properly find the defendant guilty of negligence in allowing it to accumulate and remain.

Such ridge was formed entirely of ice, frozen fast to the walk, and evidently the product of slow growth. During the ten days previous to the accident there had been no thawing weather that would loosen the ice down to the walk and allow it to be easily removed. Experience teaches us all that, until such a thaw came, such ice could be removed only by being chopped away. And it is also apparent that, if similar weather continued, snow upon the bay-window roof would continue to melt, owing to the warmth within, and the ridge of ice would continue to increase by the drippings from above it.

Can it be said, as matter of law, that reasonable care to keep its sidewalk in a safe condition does ·not require the village authorities to take notice of and remove such an obstruction ?

It is claimed that the case of *Kaveny* v. *City of Troy* (108 N. Y. 571) has so decided. Though some expressions are used in the opinion in that case, which would seem to go to the extent of holding that a village is not responsible for the ice which forms upon its walks by the drip of a roof, yet the rule of law therein stated does not, in my opinion, go to that extent. In that case, the day before the accident, snow fell to the depth of several inches and then turned into rain and froze. This covered the place of the accident with a recent sheeting of ice, which extended over the whole city, and whatever had been the condition of the walk under this new covering, it could not be said that the accident was not caused by the recent sheet of ice, for which the city could not be held responsible. The facts of that case are thus very different from the facts of the one before us. Here, although there had been a slight fall of snow just before the accident, it could not be claimed beyond all doubt that it, and not the sloping ridge of ice, was the cause of

plaintiff's fall. And the question whether such ridge could be charged against the defendant as a negligent obstruction is clearly in the case. It was not a condition which extended all over the village. It was not an impossible thing to remove. It was a thing that, if left to accumulate, would be constantly increasing and becoming more slanting and dangerous, and, in my judgment, it was a question for the jury to determine whether reasonable care on the part of the defendant did not require that it should be removed. I do not consider the *Kaveny* case as laying down a general rule for all instances where water drips from a roof upon the sidewalk, and forms a slippery and dangerous obstruction there. Each case must, to a very large extent, depend upon its own features. In *Hawley* v. *City of Gloversville* (4 App. Div. 343) we held a city liable for an accident caused by the accumulation of *ice* on a sidewalk. No reason is apparent for a distinction between cases where the water drips from an adjacent roof and where it flows on to the walk from an elevation in the adjoining lot, or from any other cause. It is the allowing it to accumulate and form a dangerous *ridge* that is the gist of the negligent act. And in each case the circumstances under which it is formed, the length of time it has existed, the means the village has had of discovering it, and its ability to remove it with reasonable effort, are all to be considered by the jury before determining whether its existence and continuance is the result of negligence.

In *Weston* v. *City of Troy* (139 N. Y. 281) a ridge of ice formed by water overflowing from a gutter on an adjacent roof and freezing upon the walk was said to create a case of neglect upon the part of the city. (See, also, *Goff* v. *Village of Little Falls*, 20 N. Y. Supp. 175.)

The question as to defendant's negligence and as to plaintiff's freedom from contributory negligence should both have been left to the jury.

For these reasons the judgment entered upon the nonsuit should be reversed, and a new trial granted, costs to abide the event.

All concurred, except HERRICK, J., dissenting.

Judgment reversed, and a new trial granted, costs to abide the event.