REEDY v. ST. LOUIS BREWING ASSOCIATION and CITY OF ST. LOUIS, Appellants.

|161   523|
|167   200|

161      523
168    ⁵243

161      523
101a   ⁵158

Division One, March 29, 1901.

1. **Negligence:** ICE ON SIDEWALK: LIABILITY OF ABUTTING OWNER: EXTRAORDINARY USE. The abutting property-owner, who has exercised the extraordinary privilege of turning water from his building onto the sidewalk by means of gutters or, spouts, is jointly liable with the city if he fails to exercise reasonable care to guard pedestrians from injury resulting from the formation from such water of ice upon the walk.

2. ——: ——: ——: DISCHARGE OF WATER ON NEIGHBOR. The common law is that the owner of property is liable if he collects rain in quantity by artificial means and discharges it in a flood on his neighbor's land, and this law underlies the requirement that he have gutters on his buildings, and so direct the water that it do not become a nuisance to his neighbor, whether that neighbor be an adjoining property-owner or a city street.

3. ——: PLEADING: PROOF: RELEVANCY. Proof that a gutter for carrying off rain on a roof was defective, is not relevant where the ice on the sidewalk which caused a pedestrian to slip and fall was due to the bursting of a pipe leading to a storage tank situated on a roof. The petition charges that the guttering on the building abutting on a street was "defectively constructed" and "that owing to the insufficiency of the spouts and gutters on said building, the water from the roof of said building overflowed upon the sidewalk of said street, where it was frozen and became a dangerous obstruction to passage over said sidewalk." A part of plaintiff's evidence showed a defective gutter, but it also showed that the ice on the sidewalk was due to the bursting of a pipe connected with a tank on the roof. *Held*, that this evidence did not connect the injury with its cause, and therefore a verdict against the owner of the building could not stand.

4. ——: ABUTTING PROPERTY-OWNER: BURSTING OF STORAGE TANK. Where the water which froze into ice on the sidewalk did not get on

the sidewalk by reason of any willful act or neglect of duty of the abutting property-owner, the city alone is responsible for the injury to a pedestrian who slipped on the ice.

5. ———: ICE ON SIDEWALK: WHEN CITY IS LIABLE.  Where the sidewalk is in fact rendered dangerous to pedestrians because of slippery ice formed from accidental or incidental discharge of water, such not being the prevalent condition of sidewalks at the time, it is the duty of the city to cause the danger to be removed within a reasonable time after it has notice or by the exercise of ordinary care could have discovered the dangerous condition.

6. ———: ———: NOTICE: EVIDENCE OF DILIGENCE.  The water from a bursting pipe in an abutting building had fallen on the sidewalk twenty-four hours before the accident.  It began to freeze immediately, and was covered with malt sprouts and during the next day many persons passed over it in safety.  Towards night boys removed the sprouts and made a skating place of it, and about two hours later the plaintiff slipped and fell, and was seriously injured.  *Held*, that if the dangerous condition dated from the time the boys removed the malt sprouts in the absence of proof that the city had actual notice, the court might properly have refused to submit to the jury the question of its constructive notice.  But, as it can not be assumed conclusively as a matter of law that the place was safe for the twenty-two hours before the boys removed the sprouts, the question of notice should have been submitted to the jury, and whether or not the city officers were reasonably diligent to discover the ice, should not be left wholly to conjecture, but some evidence on that point should be furnished the jury (who in this case were strangers to the scene of accident).

Appeal from Gasconade Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

REVERSED AND REMANDED.

*B. Schnurmacher, Carl Ungar* and *A. Nicholson* for appellant city of St. Louis.

The evidence failed to disclose facts which amount to a cause of action against this defendant.  There was no such

proof of negligence as warranted a submission of the case to
the jury.   While the petition alleges that ice had formed upon
the sidewalk to such an extent, and in such a manner, as to
"obstruct passage" over the walk and to make it in that respect
defective and unsafe, the proof showed that the accident to
plaintiff was caused by his slipping; he neither stumbled, nor
was his progress over the sidewalk impeded.   It is not every
accumulation of snow or ice upon the highway which makes it
defective, nor will mere slipperiness from ice during inclement
weather, and an accident resulting therefrom, create liability
upon the part of a municipal corporation.   The instructions
offered by this defendant, and refused, correctly declared the.
law, and should have been given.   But more than that, plaintiff
having failed in the proof necessary to create an obligation on
the part of the city, should have been nonsuited.   Stanton v.
Springfield, 12 Allen (Mass.), 566; Nason v. Boston, 14
Allen 508; Stone v. Inhabitants of Hubbardston, 100 Mass.
49; Grossenbach v. Milwaukee, 65 Wis. 31; Broburg v. Des
Moines, 63 Ia. 523; Taylor v. City of Yonkers, 105 N. Y.
202; Kinney v. City of Troy, 108 N. Y. 567; Kaveny v.
City of Troy, 108 N. Y. 571; Harrington v. Buffalo, 121 N.
Y. 147; Chase v. Cleveland, 45 Oh. St. 505; Henkes v. Minne-
apolis, 42 Minn. 530.   The ice in question resulted in conse-
quence of the sudden bursting of a water pipe on private
premises adjoining the highway, and a sudden fall of temper-
ature.   These circumstances were casual and could not be fore-
seen, and therefore the city ought not to be held liable, even .
though the formation of ice was of such a character as to make
the sidewalk temporarily defective. Market v. St. Louis, 56 Mo.
189. Plaintiff's own evidence showed that immediately after the
bursting of the pipe and the wetting of the sidewalk all pos-
sible precautions were taken to prevent accident.   The water
was swept off the sidewalk with brooms and malt sprouts were

strewn thereon, which remained until within two hours of the time plaintiff slipped. They were removed by small boys who made a slide of the ice, rendering it slippery. Under these circumstances the city will not be held liable for the accident to plaintiff. Myers v. City of Kansas, 108 Mo. 480.

*Kehr & Tittmann* for appellant Brewing Association.

(1) There is in this case no joint liability between the city and the brewing association. Each is sought to be charged upon a separate and distinct ground of liability—the city because it failed to keep the sidewalk in a reasonably safe condition for public travel, the brewing association because the gutter and spout on its building adjoining the sidewalk are charged to have been defective and insufficient. If the city is liable, it is because of its own negligence, and not by reason of the supposed negligence of the Brewing Association. Donoho v. Vulcan Iron Works, 75 Mo. 405; Wiggins v. St. Louis, 135 Mo. 558; Norton v. St. Louis, 97 Mo. 537; St. Louis v. Ins. Co., 107 Mo. 92. (2) The city has sole control of the streets and sidewalks and is alone liable for their condition. The abutting owner has no such liability. Norton v. St. Louis, 97 Mo. 537; City v. Life Ins. Co., 107 Mo. 92; Baustian v. Young and St. Louis, 152 Mo. 317; Blake v. St. Louis, 40 Mo. 569; Bassett v. St. Joseph, 53 Mo. 290; Carrington v. St. Louis, 89 Mo. 208; 1 Shearman & Redfield on Negligence (5 Ed.), sec. 343. (3) The defendant Brewing Association owed the plaintiff no duty which it has violated. The petition alleges none. Hence, there is no negligence. Fuchs v. St. Louis, 133 Mo. 194; Barney v. Railroad, 126 Mo. 372; Gurley v. Railroad, 104 Mo. 211; Roddy v. Railroad, 104 Mo. 234; Cooley on Torts (2 Ed.), 791. (4) The Brewing Association is sought to be held for an alleged negli-

gent use of its property abutting the street.   It is not charged
with trespassing on the street or doing any willful act therein.
The condition of the sidewalk on the evening of December 1,
1896, was certainly the proximate cause of the plaintiff's in-
jury, the condition of the gutter and spout on defendant's
building on the evening of November 30, 1896, at best, is only
the remote cause.   The law always refers the injury to the
proximate, not to the remote cause.   Negligence is not action-
able unless it is the proximate cause of the injury complained
of.   Shearman & Redfield on Negligence (5 Ed.), secs. 5, 8,
9, 25; Pollock on Torts (Webb's Ed.), pp. 26, 29 and 54;
Addison on Torts (6 Ed.), p. 42; Cooley on Torts, 73; Stepp
v. Railroad, 85 Mo. 229; Stanley v. Depot Ry. Co., 114 Mo.
606; Henry v. Railroad, 76 Mo. 288; Hoag v. Railroad, 85
Pa. St. 293; Sharp v. Rowell, L. R. 7 C. P. 253, 41 L. J.
C. P. 95; Blythe v. Birmingham W. W., 11 Ex. 781, 25
L. J. Ex. 212; West Mahanoy Township v. Watson, 116 Pa.
St. 344; Fawcett v. Railroad, 24 W. Va. 755; Scheffer v.
Railroad, 105 U. S. 249; Chamberlain v. City of Oshkosh, 84
Wis. 289; Lewis v. Railroad, 54 Mich. 55; City of Rockford
v. Trepp, 83 Ill. 247; Phillips v. Dickerson, 85 Ill. 11;
Brandon v. Mfg. Co., 51 Tex. 121; City of Allegheny v. Zim-
merman, 95 Pa. St. 287; Deisenrieter v. Malting Co., 97 Wis.
279; Schwartz v. Shull, 31 S. E. 914.   (5)   The ice on the
sidewalk did not constitute an obstruction in the sense of the
law.   The instruction asked by the defendant Brewing Asso-
ciation on this subject should have been given.   Broburg v.
Des Moines, 63 Iowa 523; Chicago v. McGiven, 78 Ill. 347;
Mauch Chunk v. Kline, 100 Pa. St. 119; Gilbert v. Roxbury,
100 Mass. 186; Smythe v. Bangor, 72 Maine 249; Pinkham
v. Pottsfield, 104 Mass. 78; Taylor v. City of Yonkers, 105 N.
Y. 202.   (6)   By stepping into the street, plaintiff would
have avoided the ice on the sidewalk and would thus have

escaped the risk of injury. His failure to do so is contributory negligence. Cohn v. City of Kansas, 108 Mo. 387; City of Indianapolis v. Cook, 99 Ind. 10; Boyle v. Borough of Mahanoy City, 40 Atl. Rep. 1093.

*A. R. Taylor* and *B. L. Mathews* for respondent.

(1) If the defendant St. Louis Brewing Association allowed water from its building to be cast upon the sidewalk in question, and to freeze thereon, so as to render the sidewalk dangerous, and by the exercise of ordinary care could have removed the obstruction before the injury to the plaintiff, then the St. Louis Brewing Association is liable, whether the bursting of the water pipe and overflow of the water upon the sidewalk was accidental or not. Such defendant in such a case is liable because after it discovered that the water from its roof had created a dangerous nuisance on the sidewalk, it was bound to use care commensurate with the situation to remove the danger it created. This is a moderate statement of the liability of the St. Louis Brewing Association, under the circumstances, for cases can be produced in numbers where an abutting owner is held from the simple happening of the nuisance. Benjamin v. Railroad, 133 Mo. 285; Corwin v. St. Louis, 151 Mo. 347. (2) The city is primarily liable for the condition of its streets and sidewalks, but if another create a nuisance on a sidewalk as in this case, the city can be held, and only held, after it has notice either actual or constructive in time to have caused the removal of the nuisance. This is clearly held, in Carvin v. St. Louis, 151 Mo. 347; Baustian v. Young, 152 Mo. 325. This case is entirely unlike the cases cited for appellant, of Norton v. St. Louis, 97 Mo. 537 and City v. Ins. Co., 107 Mo. 92. These cases, nor any others cited give color to appellant's contention that an abutting owner

may by his own act erect or cause a nuisance to exist in a street, and not be liable for the consequences. (3) It is obviously true, that the condition of the sidewalk on the evening of December 1, 1896, was the proximate cause of the injury. Had the condition been changed—the nuisance removed, at any time before 7 p. m., December 1, 1896, the injury would have been averted. The wrongdoer continues liable; and if the city, by the required degree of watchfulness and care, could have removed the nuisance before plaintiff's injury, and neglected to do so—then both are liable. Wiggin v. St. Louis, 135 Mo. 566. (4) Even if the plaintiff had known of the dangerous condition of the sidewalk in question (which the evidence shows he did not), this would not, under the circumstances of the case, have barred a recovery. Loewer v. Sedalia, 77 Mo. 404; Maus v. Springfield, 101 Mo. 618; Flynn v. Neosho, 114 Mo. 572; Graney v. St. Louis, 141 Mo. 184. (5) The instructions given for plaintiff are correct if the law is as we have urged under preceding points. We see no reason for criticism of the third instruction. The gravamen of the petition was the overflow of the gutter by water from appellant's building, by reason of defective gutters. It is immaterial that the water came from a bursted waterpipe. It did come. It did overflow. The question of defective gutter was submitted to the jury, and they answered by their verdict. Moreover, after the water was on the sidewalk through the default of appellant, it continued there up to the time of the injury to the plaintiff. This is all covered by the allegations of the petition. (6) Our courts have never undertaken to lay down a precise rule as to time necessary to impart notice to officers of a city of a defect in a sidewalk or street. Thus, in Carrington v. St. Louis, 89 Mo. 213, the court held that the existence of a patent defect, i. e., an open cellar door, for three hours, on a

Vol 161 mo—34

street not as much traveled as Eighteenth street, was sufficient to take the case to the jury on the question of notice to the city of the defect; under that decision the evidence in this case of notice to the city was ample. In Franke v. St. Louis, 110 Mo. 523, it was held that an open, patent defect, in or on a sidewalk, for "even a day, would furnish sufficient evidence to justify a jury in finding notice." This was an open defect, it was upon the sidewalk, it existed during the night of November 30, during the day of December 1. Under the rule of the above cases the case was properly left to a jury on the question of notice to the city.

VALLIANT, J.—Plaintiff slipped and fell on ice on a sidewalk in one of the public streets of the defendant city and suffered serious injuries; this suit is to recover damages for those injuries. The defendants were sued as joint tortfeasors. The joint injury is alleged to consist in neglecting to remove the ice from the sidewalk within a reasonable time after its existence was known or would have been known if reasonable care had been observed. The defendant, the St. Louis Brewing Association, is charged in the petition to have caused the ice to form by suffering water from its abutting premises to flow upon the sidewalk in freezing weather; the particular fact of negligence alleged against the Brewing Association is that the gutter on that defendant's building was in "defective condition;" "that owing to the insufficiency of the spouts and gutters on said building, the water from the roof of said building overflowed upon the sidewalk of said street, where it was frozen and become a dangerous obstruction to passage over said sidewalk." The defendants answered severally, denied the allegations of negligence, and pleaded that plaintiff was himself guilty of negligence that contributed to his injuries.

It appeared from the evidence that the Brewing Associ-

ation owned buildings at the southeast corner of Eighteenth street and Cass avenue, running south to a paved alley twenty feet wide. Next south of the alley is its storage-house, which is about forty feet high. The buildings north and south of the alley are connected by a bridge; on the building east of the storage-house, there was a water tank supplied by a pipe running across the bridge from north to south. It was a two or two and one-half inch pipe packed in a wooden box extending over the roof of the storage-house to the tank. This was a flat gravel roof, forty by fixty-two feet, with a copper gutter around it four inches wide at the bottom and eight at the top, with a four and one-half inch down-spout of galvanized iron. As to the condition of the gutter the testimony was conflicting; two of plaintiff's witnesses said it sagged in the center, and one said it bent outward. Defendant's witnesses testified that it was in perfect condition, of best material and workmanship, set on brick the entire length of the wall and could not sag; that the pitch of the roof was eighteen inches from east to west, and the gutter and down-spouts sufficient to carry off the rainwater that would accumulate on a roof of that size.

Plaintiff lived in the same block just south of the brewery, and visited it almost every day. On the evening of November 30, 1896, between 7 and 7:30 o'clock, plaintiff went to the brewery and informed the night watchman that water was running off the roof upon the sidewalk; the two went out together and saw water running off the roof of the storage-house. The night watchman went upon the roof and there found that a leak had occurred in an elbow in the pipe leading to the tank; he went across the bridge to the mill-house and turned off the water, then got a broom and swept the water off of the sidewalk as well as he could. The superintendent of the brewery, who lived near, was notified, and he caused two men to spread malt sprouts on the sidewalk where the water had fallen, with

a view to prevent the ice becoming slippery, as it was then cold and freezing. There was no rain or snow, the weather was clear, dry and cold. The water that had thus fallen from the roof of the storage-house, or so much of it as had not been swept off, became frozen, and covered the sidewalk from the building line to the curb with a coating of ice. The ice was thicker near the building line and the curb than in the center. The location is a thickly inhabited part of the city, and a great many people (the witnesses said thousands) passed over the place the day following, which was December 1. About 5:30 p. m. that day a lot of boys were seen sweeping the malt sprouts from the ice to convert it into a skating place, and used it for that sport. About 7 o'clock that evening the plaintiff, while walking in the center of the sidewalk on this ice, slipped and fell, receiving serious injuries.

In its instructions the court, after presenting in other respects the plaintiff's hypothesis of the case, including the formation of ice on the sidewalk, rough and uneven, so as to be a dangerous obstruction to persons passing, directed the jury to find for the plaintiff against both defendants, if they found from the evidence that "the water was caused to so fall upon said sidewalk because the gutter of said building was out of repair and insufficient to carry the water from the roof of said building, and if the Brewing Association did not use ordinary care in maintaining the gutters in that condition, and in suffering the ice to so remain on the sidewalk, and if the city knew, or by the use of ordinary care would have known, of the condition in time to remove it." Other instructions upon like hypotheses (leaving out that of the city's duty) directed a verdict against the Brewing Association alone, to all of which exceptions were taken. It is unnecessary to here copy the instructions given for defendants, but it is sufficient to say that in general they directed a verdict for defendants and each

of them, unless the acts of negligence propounded in plaintiff's instructions, were established by the proof, or if the plaintiff was himself negligent. For the city, the instructions given carried the theory that the mere formation of ice or accumulation of snow on the sidewalk did not constitute a condition for which the city would be liable, but that the ice or snow would have to be so rough and uneven as to constitute an obstruction dangerous to persons using the sidewalk, while exercising ordinary care. Each defendant asked an instruction in the nature of a nonsuit and among others, instructions to the effect that ice which was smooth and slippery was not an obstruction, but to become such it must be rough and uneven in its surface; those instructions were refused, and their refusal assigned for error.

There was a verdict for $4,500 for plaintiff, against both defendants, from which they appeal.

I. The first proposition advanced by the defendant Brewing Association is that the petition makes no case of joint liability of the two defendants but that as to the one the charge is negligence in suffering water to be discharged on the sidewalk in freezing weather, and as to the other allowing an obstruction to remain in the street for an unnecessary period after it was known or would have been known by the use of proper care. It is argued upon the authority of Norton v. St. Louis, 97 Mo. 537, St. Louis v. Conn. Mutual Life Ins. Co., 107 Mo. 92, Baustian v. Young, 152 Mo. 317, and other cases cited, that the abutting owner is not responsible for the condition of the sidewalk in his front, but that the duty to look after that is on the city alone. It does not, however, impair the doctrine laid down in those cases to say that an individual may become liable and jointly liable with the city for an unsafe condition of the sidewalk. This liability does not arise from the fact that he is owner of property abutting the sidewalk, but from the fact

that he is instrumental in causing the condition, either by his willful act or negligent omission to perform a duty which the law imposes on him. If he is allowed an extraordinary use of the sidewalk for his private convenience, as for example, to place in it a manhole for the reception of coal (Benjamin v. Ry. Co., 133 Mo. 274), a water meter (Carvin v. St. Louis, 151 Mo. 334), or an excavation in close proximity to the sidewalk for a foundation for a new building (Wiggin v. St. Louis, 135 Mo. 558), the law imposes on him the exercise of reasonable care to guard the public from injury in such use. And it may be said that if the individual neglect to perform any duty that the law imposes on him in particular, and a dangerous condition of the sidewalk results, then a new duty on him in relation to that condition arises, and, of course, with greater force, it would be so if that condition was the result of his willful act.

Now, the petition in this case charges that the defendant Brewing Association maintained a defective gutter and that the insufficiency of the spouts and gutters resulted in the discharge of water on the sidewalk, where it became frozen. If, therefore, it was the lawful duty of that defendant to maintain spouts and gutters sufficient to prevent a discharge of water on the sidewalk, its neglect to do so and the resultant ice, imposed a duty on that defendant with reference to the ice which the law would not have imposed if the water had fallen from the clouds in the form of rain or snow.

It is said by this defendant that there is no law requiring it to have gutters and down-spouts on its buildings at all. There is no statute on the subject that we are aware of, but the principle of the common law is that whilst the owner of adjoining property is not responsible for the natural flow of water across his land on to the land of his neighbor, yet he is liable if he collects it in a quantity by artificial means and

discharges it in a flood on his neighbor's land, and that principle underlies that feature of this case. Water accumulated on a large roof and directed to a single point may cause a nuisance for which the owner of the house would be liable.

If, therefore, the petition is to be construed into stating a case in which the Brewing Association was negligent in suffering water to be discharged on the sidewalk where it became frozen and formed a dangerous condition (and that seems to have been the construction put upon it by both parties and the trial court) then it showed a condition of the sidewalk for the continuance of which for an unnecessary period both defendants would be liable, the joint wrong being the neglect to remove the obstruction.

II. But neither the petition nor the evidence of plaintiff presents a theory of duty on the part of the Brewing Association to furnish gutters and down-spouts to carry off water from a bursting pipe or a bursting tank. Conceding that the gutter sagged in the center and that it bent outward (upon which point the testimony was conflicting) and that it was insufficient to carry off this water, it does not follow that the gutters and spouts were not sufficient to carry off the rain and melting snow that might fall upon the roof, and that is all that would naturally be inferred as their purpose. Suppose the pipe had burst at a point on the bridge over the alley, the water would probably have reached the sidewalk where it is crossed by the alley entrance without passing through the gutter; or suppose the tank had burst, what would the defective gutter have had to do with the flooded sidewalk? These ideas are suggested to point the fact that there is no relation, as far as the pleadings and proof show, between the office of the gutter and the water in the pipe. When this pipe burst, the water may have been forced in a body by the pressure on the mains to a given point where the gutter was unable to impede

it; but the gutter was not designed for that purpose. There is nothing in the case as made upon which the court could hold the Brewing Association liable for failure to furnish a gutter and down-spouts sufficient to carry off water from a bursted pipe. And even if the evidence had shown that the gutter was insufficient to hold rainwater, that would not have helped out the plaintiff's case, because the plaintiff's injuries did not result from a discharge of rainwater on the sidewalk. There is no suggestion either in the pleadings or evidence, that there was any defect in the pipe that burst, or that the bursting was attributable in any degree to negligence of defendant Brewing Association. Since the water did not get on the sidewalk by reason of any willful act or neglect of duty on the part of this defendant, the condition of the sidewalk in consequence was the city's affair alone. The trial court should have given the Brewing Association's instruction for a nonsuit.

III. The law requires a city to keep its streets and sidewalks in reasonably safe condition for the purposes for which they are designed and holds it liable to one who, while properly using the street, suffers injury in consequence of its dangerous condition, provided the city had neglected a reasonable opportunity to remove the danger.

The questions that we meet, therefore, on this branch of the case, are, did the ice in this instance render the sidewalk dangerous, if so did the city have a reasonable opportunity to remove the danger before the plaintiff suffered? Snow and ice on sidewalks have been the occasion of many injuries to persons, and the law-books are full of instances where the duty of a municipality in respect to such conditions has been discussed.

Running through all the cases to which our attention has been called on this subject, we find the general proposition that ice or snow upon a sidewalk or in a street is not to be classed

with dangerous obstructions, such as a city is required to remove. It would be more accurate to say that it is a dangerous obstruction, but that it is excepted from the category of obstructions for which the city is liable upon the ground of the impracticability of the city's removing it. There are, for example, in this city many hundreds of miles of sidewalks upon which snow falls and ice forms when the weather suits, and immediately upon its fall the snow is beaten down by the feet of thousands walking over it. To some extent the sidewalks and streets may be and are cleared of such obstruction, but to remove it entirely or to a degree that would render it not dangerous, is impracticable and therefore not embraced in the law's reasonable requirements. There is another reason for making snow or ice, on the sidewalks and in the streets, an exception to that dangerous condition for which a city is liable, that is, when that condition exists generally, it is obvious and every one is on his guard. Any pedestrian on the sidewalk or traveller in the street is warned by all his surroundings that ice and snow abound and consequently danger of slipping and falling is to be apprehended at every step. The law is reasonable in this, as in all things.

There is a collection of interesting cases in the briefs of the learned counsel on this subject which are authority for saying that when the ice or snow is merely smooth and slippery it is not such a dangerous condition as will render the city liable, but that that condition arises only when the ice or snow has been suffered to accumulate so as to form an uneven surface, making it dangerous to attempt to pass over. [Stanton v. Springfield, 12 Allen, 566; Nason v. Boston, 14 Allen, 508; Stone v. Hubbardston, 100 Mass. 49; Grossenbach v. Milwaukee, 65 Wis. 31; Broburg v. Des Moines, 63 Iowa 523; Taylor v. Yonkers, 105 N. Y. 202; Kaveny v. Troy, 108 N. Y. 571; Harrington v. Buffalo, 121 N. Y. 147; Chase v. Cleve-

land, 44 Ohio St. 505; Henkes v. Minneapolis, 42 Minn. 530.] The principle involved in those cases was present in the minds of the court and counsel in the trial of this case, as was shown in the instructions given and in those asked and refused. But the circumstances of the case at bar do not bring it within the reason upon which the doctrine of those cases is founded.

In the first place, whilst the evidence showed that the ice was thicker at both edges of the sidewalk than it was in the center, yet it was not such a piling up of ice at either side as would convert it into a dangerous obstruction if it was not dangerous otherwise, and besides, the plaintiff fell in the center where the ice was smooth, and he fell because it was smooth and slippery.

And, on the other hand, the reasons which except slippery ice on a sidewalk from the category of dangerous obstructions for which a city may be liable, do not exist in this case. The water which was frozen here did not fall in rain or snow from the clouds; the city was not confronted with a thousand miles of ice-covered sidewalks to look after, nor were the people using the sidewalk at this point admonished by the general conditions surrounding them that ice was to be expected. The weather was dry, clear and cold, there was ice at that point for a distance of about fifteen feet, but not elsewhere. That the condition was dangerous is demonstrated by the plaintiff's fall; that the danger could have been removed with little labor or expense is beyond question. Therefore, the city is not excused as it is when its powers are overcome by nature covering the face of the earth with ice and snow.

In one of the cases above cited under this head (Henkes v. Minneapolis) there is an expression to the effect that no difference in principle is seen between a case of ice formed from rain or snow and that formed from water escaped from a hose of a fire engine. But the facts of that case do not mark

it so distinctively as to make it an authority for that proposition, because, although water from the hose had entered into the case, yet it scarcely changed the conditions. The court said: "The sum of all the evidence is that it was, and for some time had been, cold winter weather, and all the sidewalks of the city were covered with ice to a certain extent, so that 'if a man didn't take care, he was liable to slip and fall almost any place.' "

In Chase v. Cleveland, supra, the Ohio court put the exemption of the city, from liability on account of ice on the sidewalks, upon the ground that it would be unreasonable to require the city to remove the obstruction; said that court: "It is not unreasonable to assume that there were hundreds of similar places in the city of Cleveland at the time of the accident to plaintiff. To effectually provide against dangers from this source would require a large special force involving enormous expense."

We hold that where the sidewalk is in fact rendered dangerous because of slippery ice formed from accidental or incidental discharge of water, such not being the prevalent condition of sidewalks at the time, it is the duty of the city to cause the danger to be removed within a reasonable time after it has notice or by the exercise of ordinary care would have discovered the condition. This brings us to the second question under this head, that is, did the city neglect that duty? The city is not negligent unless it knew or should have known that the dangerous condition existed, and after such notice, actual or constructive, it was entitled to a reasonable time to remedy the fault. [Baustian v. Young, 152 Mo. 317.]

The water had fallen upon the sidewalk about twenty-four hours before the accident. It seems to have been frozen or some of it, almost immediately, and the brewery people covered the surface with malt sprouts with a view to rendering it less

dangerous, and these remained until about an hour and a half before the plaintiff fell. During the day, it was said, thousands of people passed over it in safety. It was about night-fall when the boys swept the malt sprouts off and made a skating place of it. It was after dark when the plaintiff fell. The only evidence of notice to the city was contained in those circumstances. The instruction on this point was: "And if the jury find from the evidence that the city of St. Louis by its proper officers having charge of keeping its streets in repair, knew or by the exercise of ordinary care would have known of said defective conditions of said sidewalk in time, by the exercise of ordinary care, to have caused said ice to be removed before plaintiff's injury and neglected to do so," etc.

The question of notice in such case is one of fact, and where it is to be inferred from circumstances, it depends upon those peculiar to the case; no definite rule can be laid down either as to duration or conditions. [Franke v. St. Louis, 110 Mo. 516.] We can not say that the circumstances in this case did not justify the court in submitting that question to the jury, but in submitting it the court left a great deal of inference to be drawn by the aid of that common knowledge which jurors derive from their everyday experience. Whilst that is a source of information which the law under certain conditions authorizes a jury to draw upon, yet because of its uncertainty it should be resorted to with caution. In this case we must remember the jury was not drawn from the vicinage of the accident, nor was it composed of men familiar with the duties of the city officers. The cause had been taken by change of venue to Gasconade county and it was tried by a jury of strangers to the scene of action. Therefore when the court gave them the instruction that required them to consider the care that would be exercised by the city's "proper officers having charge of keeping its streets in repair," it left them very

much to conjecture.  If plaintiff relied upon an inference of notice derived from the ordinary duties of the city officers, he should have furnished this jury some evidence on that point.  The question was confused before the jury with questions relating to the liability of the Brewing Association that should not have been submitted.  This was doubtless to the city's prejudice.

If the dangerous condition was to be reckoned from the time the boys swept the covering of malt sprouts off the ice, in the absence of proof that the city had actual notice, the court might with propriety have refused to submit to the jury the question of the city's constructive notice, depending as it did on an inference to be drawn from the length of time the condition had existed, because the plaintiff's fall occurred within less than two hours after the boys had swept off the malt sprouts, and it was about dusk when that was done.  But it can not be assumed conclusively as a matter of law that the condition was safe until the boys did the mischief.  The ice had been there twenty-four hours, which was long enough to have at least raised a question of constructive notice, and it could have been removed entirely in a very short while with trifling expense.  Whether seeing that the ice was covered with malt sprouts was all that the situation reasonably demanded and all that could have been reasonably expected of the city with the ordinary means at its hands, was a question of fact, and one which the jury was possibly better equipped with common knowledge of things to try, than they were, the question relating to the duties of the city's "officers having charge of keeping its streets in repair."

The case was tried on a wrong theory.  The instructions were fashioned on those decisions above cited which related to a condition of ice and snow all over the city, rendering it practically beyond the city's means to remove, and holding the city

liable only in case the ice or snow is suffered to be piled up so as to create a veritable obstruction to climb over. The jury were told that if they found that condition they should find for the plaintiff and the jury so found although there was no evidence of such a condition. There was evidence, as we have seen, tending to show that the sidewalk for a distance of about fifteen feet was covered with smooth slippery ice which rendered it dangerous and that it was altogether practicable to remove the danger and that the city would by the use of ordinary care have known of the condition in time to have removed the ice or obviated the danger. The case as between the plaintiff and the city should have been given to the jury with appropriate instructions on that theory. There was no case at all made against the Brewing Association.

The judgment is reversed and the cause remanded to the Gasconade Circuit Court to be retried according to the views herein expressed.

All concur, except *Marshall, J.,* absent.