## LIABILITY OF MUNICIPALITY GROWING OUT OF FORMATION OF ICE ON SIDEWALK.

Common Pleas Court of Cuyahoga County.

PETER BURLINGHAUSER V. CATHERINE LAISY ET AL.

Decided, April 14, 1911.

*Negligence—Water Dropping from Eaves of Building Runs Over Side-*
*walk—Ice Forms and a Pedestrian is Injured—Municipality Not*
*Liable as for Maintaining a Defective Sidewalk, When—Nuisance.*

1. Water cast upon the sidewalk by natural causes, which afterward
   freezes and causes a dangerous condition for pedestrians, does not
   in the absence of proof of unreasonable delay in its removal afford
   ground for an action against the municipality, by one who fell
   on the ice and was injured, for negligence in permitting the side-
   walk to become defective.

2. The formation of ice on a sidewalk is the result of a natural rather
   than an artificial cause, where it is due to water which fell from
   the eaves of a building and was carried by gravity over the walk
   where it froze.

*S. H. Herbeson,* for plaintiff.
*W. C. Pollner,* for Catherine Laisy.
*Geo. C. Hausen,* for Henry Schmidt.
*Newton D. Baker,* for the City.

BABCOCK, J.

The plaintiff moves for a new trial, for the alleged error of
directing a verdict for the city of Cleveland. Proof was undis-
puted that the sidewalk was not defective where the plaintiff
fell, but there was proof that the eaves of an adjoining build-
ing, and without gutters, dripped on the ground near the line
of the street and within a foot or a foot and a half of the side-
walk. The water ran across the walk and into the street, and
on the night previous froze as it fell and ran. The only way
of escape for the water was over the walk when it rained so hard
that the ground did not absorb it as it fell. The proof showed
that on the night before, a rain and sleet storm passed over the
city and covered the city streets with a thin coating of ice, and

the plaintiff fell on the sidewalk about 8 or 9 o'clock the following morning. There was proof that at one place in front of the building named the ice was some three inches thick on the inside of the walk, and tapering to an edge farther out towards the curb. This formed a ridge a couple of feet wide, and in the thickest part two or three inches in thickness. This icy formation was in part the result of the freezing of the water which ran onto the sidewalk from in front of the dripping eaves. This ice was covered with a thin coating of snow, which in part obscured its presence, or particularly its irregular formation. There was proof, also, that a year or two before this time a ridge of ice had accumulated at this place, at a time of storm and temperature uniting to cause it.

The question is, whether this made a case to submit to the jury on the question of nuisance on the part of the city of Cleveland.

Where the sidewalk is not defective, mere slipperiness, without the element of notice and delay in removing ice, does not present any question of fact for the consideration of a jury. This is conceded by the plaintiff. But it is said this case is one of defective sidewalk, caused by a defective condition adjacent thereto, which endangers the safety of travelers when weather conditions and storm are such, as in this instance, to cause ice to form on the sidewak at this place.

Defendants thus distinguish the case from the rule established in the Chase case in the 44 Ohio State, 505, and in *Village of Leipsic* v. *Gerdeman,* 68 Ohio State, 1.

The decisions seem to recognize liability for nuisance where an icy ridge endangers the safety of the pedestrian, caused from an artificial construction on the adjoining lots and near the sidewalk, by reason of which an icy ridge is caused on the sidewalk, other essential elements uniting. These cases also seem to recognize the converse proposition, to-wit, that there is no liability if water comes off the adjoining lot and onto the sidewalk from natural causes.

If there was a question of fact presented in this case which should have been submitted to the jury, it was because of an icy ridge formed from dripping eaves near the sidewalk, resulting in water running onto the sidewalk and freezing during the previous night.

The following cases involve ice obstructions on sidewalks from dripping eaves adjacent thereto:

"Plaintiff was injured by falling upon ice which had formed upon the sidewalk owing to the freezing of melted snow and ice which had dripped from an adjacent building. The ice extended about half way across the walk, sloping slightly down from the building. Its average thickness was about one inch, and it was not piled up or uneven except near the building. The sidewalk being properly constructed, and there being nothing in the construction or condition of the building upon which negligence could be predicated, it is held that the city was not liable." *Hausman* v. *Madison,* 85 Wis., 187.

"It is no part of the duty of a municipal corporation to prevent ice forming on sidewalks from the drip of a roof." *Kadney* v. *Troy,* 108 N. Y., 571.

A charge that if the accumulation resulted from drip from the eaves of a house, plaintiff could not recover; but that if it resulted from an accumulation of snow on the walk, the jury might find that it was negligence on the defendant's part, was upheld in 29 N. Y. St. R., 340.

"Where there was no structual defect, such as, if inconsistent with the safety of travelers, would be an encroachment upon the street, and the way it is used, properly constructed, a descent of snow or water from the roof of a building, whether sudden or gradual, would not give a right of action for injuries, as there was not a defect or want of repair in the highway." *Hixon* v. *Lowell,* 79 Mass., 50. See also 142 Mass., 536, and 136 Mass., 119.

In *Greenlaw* v. *Milliken,* 100 Me., 440; the defendant owned a house on the southerly side of State street in Portland, about 8 feet from the street, the yard descending 3½ feet from the bow window to the sidewalk. The construction of conductors was such as to lead the water onto a private walk along the driveway to the barn, and it then ran down the driveway to the street. Rust and decay had caused the water spout to let the water run into the yard on the grass and find its way by gravitation across the sidewalk. This water froze on the sidewalk, making it dangerous to pedestrians. The plaintiff fell, and sued the abutting owner. The court held:

"That to entitle the plaintiff to recover, it was necessary for her to show that the icy condition of the sidewalk resulted from water *artificially* conducted upon the sidewalk, and not from surface water *naturally* flowing upon the sidewalk, or from melting snow which had fallen upon the sidewalk, and this the evidence did not show."

It will be observed that the water ran from a roof 7 feet 7 inches away from the sidewalk. This was first collected from the eaves by the water spout, and then turned on the yard, and by gravitation it was caused to run across the walk. The court held this to have been an accumulation of ice from natural rather than artificial causes.

In *Gavett* v. *City of Jackson*, 109 Mich., 408, the court held:

"The duty of a municipality to keep sidewalks in a condition reasonably safe for public travel can not be extended so as to render it liable for injuries received by reason of the formation upon a walk of a thin strip of ice caused by the discharge, at a point two feet away, of water conducted from a pipe from a sag in an eaves trough."

This case was decided by a divided court, and the opinions clearly accentuate the proposition under discussion and involved in the case at bar. Says Grant, J., on page 411:

"What are the artificial means, as distinguished from natural ones, for which municipalities must be held liable? People have a right to erect buildings from which the water must flow to the ground; and if it comes faster than the ground can absorb it, it must flow onto the sidewalk. Is the city to be held responsible * *. * for this rightful and natural flow of water when the weather has intervened and frozen it? People have the right to conduct the water from the roofs of their buildings to the ground by means of gutters, eaves-troughs and conductors. This water must seek the street gutters and be carried away. This is done in all villages and cities where direct communication is not made from the conductor to the sewer. Why should the city be held liable for accumulations caused by the action of the water in this case, and not liable for accumulations just as dangerous resulting from other causes. Many, and probably most, houses are built higher than the sidewalks, with sloping yards in front. Under the rule sought to be established in this case, municipalities would be liable for the natural flow of water from such spouts over the yards to the sidewalk. Such holding

is not consistent with the former decisions of this court. The non-liability for the natural flow and spreading of water as it comes from conductors, is recognized in *Hughes* v. *City of Lawrence,* 160 Mass., 481. * * * I think that the logical conclusion from our former decisions is, that the defendant is not liable.''

Hooker, J., follows with an extended opinion, arriving at the same conclusion; while Montgomery, J., dissents, and gives his reasons therefor.

I call attention, also, to the following cases: 50 Hunn. (N. Y.), 605; 121 N. Y., 147; 42 Minn., 530; 46 Hunn., 569; 108 N. Y., 571; 6 N. Y. Sup., 381; 28 N. Y. Sup., 916; 21 L. R. A., 263; 12 N. Y. S. R., 866; 164 Ind., 570.

From these and other decisions, I conclude the rule to be, that where water is cast upon a sidewalk by natural rather than artificial causes, slippery conditions which are dangerous to pedestrians do not furnish, without some proof of delay in the removing of same, any ground of action against municipalities as having permitted the sidewalks to become defective; and that water flowing from eaves near a sidewalk, and running over the same through the forces of nature, results from natural rather than artificial causes. That in this case the water, first finding the ground from the eaves, is not increased in quantity from what it would have been had there been no roof; and that the foot or foot and a half of passage from where it fell to the ground to the sidewalk constitutes it a case of water draining over a yard upon the sidewalk by reason of the ground in the yard being higher than the walk itself, and this being cast upon the sidewalk by natural causes rather than artificial, relieves the defendant city of Cleveland from liability, in view of the fact that the ice had accumulated during the night before, and the plaintiff was hurt early in the morning thereafter.

The motion is overruled.