# THE CITY OF QUINCY

## *v.*

# EBENEZER B. BARKER.

1. CITIES AND TOWNS—*liability of, for defects in streets and sidewalks.* Obstructions or defects in the streets or sidewalks of a town or city, to make the corporation liable for injury occasioned thereby, must be of such a nature that they are in themselves dangerous, and can not be readily detected, or such that a person exercising ordinary prudence can not avoid danger or injury in passing them.

2. NEGLIGENCE—*by party injured upon public street.* If a person, who is acquainted with a sidewalk over which he is passing in daylight, walks upon a portion of it which is obstructed with an accumulation of ice, when there is plenty of space on either side for him to pass along and avoid such obstruction, he is guilty of such want of care as to preclude his recovery from the city for any injury he may sustain by reason of such obstruction.

WRIT OF ERROR to the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

Mr. O. H. BROWNING, and Mr. W. H. GOVERT, for the plaintiff in error.

Messrs. WHEAT & MARCY, for the defendant in error

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action on the case, brought by Ebenezer Barker, against the city of Quincy, to recover damages for an injury resulting from a fall on a sidewalk of the city, on the 2d day of February, 1873. A trial of the cause before a jury resulted in a verdict in favor of the plaintiff for $1000. The court overruled a motion for a new trial and rendered judgment on the verdict; to reverse which this writ of error was brought. While the sidewalk where the accident happened was somewhat rough and uneven, owing to the fact that some of the brick of which it was constructed had worn more than others, yet we see nothing from the evidence that would justify the conclusion that the walk was so defective in itself as to render

it unsafe or dangerous for those who had occasion to travel upon it.

Even the plaintiff admitted upon the stand, on cross-examination, that "if there was no ice a person could have gone over the sidewalk there without danger;" and this was corroborated by a large majority of the witnesses, who concur in the opinion that, aside from the ice, the walk where the accident occurred was reasonably safe.

We do not, therefore, deem it necessary to say anything further upon this branch of the case. ·

It is not questioned that the plaintiff slipped and fell upon the sidewalk, the result of which was a fracture of the hip bone and an injury to the spine. It is also true that the injury received was serious in its character, and if the evidence justifies any verdict, the judgment rendered was not excessive.

The controverted question in the case, however, is, whether the sidewalk where the accident occurred was obstructed in such a manner as to render the city liable, and, whether the obstruction was the cause of the injury, or whether it was' to be attributed to the want of ordinary care on the part of the plaintiff.

Some of the witnesses testify that the sidewalk where the injury was received was twelve feet wide, while others say it was sixteen feet. The ice, upon which the plaintiff slipped and fell, was near the center of the walk, about one foot wide, and from two to four inches thick. It is clear, from all the evidence, that there was ample room on either side of the ice for persons to travel on the walk without passing over or upon it.

The plaintiff, in his evidence, in speaking of the ice and sidewalk where he was injured, said, "The ridge was four or five inches high, and, I think, pretty nearly solid; I should judge a foot wide, more or less; it run up sharper towards the top; I do not know but the condition of the sidewalk on each side of the ridge was fair; it might have been fair; the sidewalk there, I think, was about twelve feet wide; my impression is that this ridge was a little more to the south, but very

near to the center of the sidewalk; if the sidewalk was twelve feet wide, then there was eleven feet of the sidewalk there unobstructed by the ridge; it is possible that the sidewalk there is sixteen feet wide, if so, then it would have fifteen feet of unobstructed space; if the sidewalk was only twelve feet wide there would be some four or five feet on the south side of the ridge, and some six or seven feet on the other side; and if it was sixteen feet wide, there would still be a greater space where the sidewalk was in tolerable condition."

Herman Marcker, a witness for the plaintiff, on cross-examination, said, "There might have been some snow under that ice, but there was not much, just a thin sheet of ice—a thin veneering of ice. If the ice had not been there, there would not have been any danger of a person, in walking, falling, who was taking any care. There was not, to my recollection, any ridge of ice there a foot wide; there was no high ridge of ice there; there was space enough on each side for persons to walk without getting on that little place; I should think if it had not been for the little glazing of ice, the walk would have been in a reasonably good condition to walk over; I do not know how long that glazing of ice had been on that pavement; it did not look like there had been much travel on it, because the travel would have made it rough; it must have been made either during the preceding night or that morning."

Edward Bernard, a witness for plaintiff, on cross-examination, said, "There was room enough between the ice and the edge of the pavement for a person to walk without getting on that ice; a person taking ordinary care, noticing where he was going, could have passed along there without falling."

The defendant introduced evidence on the same question, which was still stronger in support of defendant's theory, but it is not necessary to refer to it.

From the evidence of the plaintiff it is apparent that on each side of the small piece of ice upon which the plaintiff slipped and fell, the walk was from five to seven feet wide and in good condition, over which a person could pass with entire safety.

It will be remembered that this accident did not occur in the night time, when the plaintiff could not see the condition of the walk, but in broad daylight. Nor was the plaintiff unacquainted with the walk, as he had been in the habit of passing over it on his way to the post office twice every day.

The law does not require a city or incorporated town to respond in damages for every injury that may be received on a public street. Before a recovery can be had it must appear that the party injured used ordinary care to avoid the danger.

In *The City of Aurora* v. *Pulfer*, 56 Ill. 270, it was held that the obstructions or defects in the streets or sidewalks of a city, to make the corporation liable, must be of such a nature that they are in themselves dangerous, or such that a person exercising ordinary prudence can not avoid danger or injury in passing them; in general, such defects as can not be readily detected.

Under the rule announced in the case cited, it is difficult to perceive upon what ground, under the facts established before the jury, the plaintiff can recover.

If it be conceded that the ice upon the sidewalk was an obstruction, it was a defect in the walk that could be readily detected; it was in the center of the walk and in plain view, and could not escape the attention of a pedestrian, unless he was walking in a hasty and reckless manner. Can it be said that the ice upon the walk was such a defect that the plaintiff, by the exercise of ordinary care, could not have avoided the danger? We apprehend not. If he had given that attention to the walk that is required of a prudent man, he, no doubt, would have seen the ice, and then he could have passed on either side of it in safety, as the walk was sufficiently wide and safe for that purpose.

Had the plaintiff been unacquainted with the walk, and been passing over it in the night time, when the obstruction could not have been seen, then a different question would arise; but here the ice was in plain view, and by the exercise of ordinary prudence it could have been seen and passed without stepping upon it, and thus the danger would have been avoided.

It is utterly impracticable for a city or incorporated town at all seasons of the year to keep streets and sidewalks free and clear from ice; and should the incorporation be held liable for every accident that might occur from an obstruction of this character, the result might be to bankrupt every incorporated town in the State.

While the law requires a municipal corporation to keep its streets and sidewalks in a safe condition, and clear of all dangerous obstructions, yet a person who travels over the streets or sidewalks has no right recklessly to walk into danger, and if he does so he can not recover for an injury received.

The pedestrian must exercise due and ordinary care to avoid danger, and where he fails to do so, and if it appears, had that precaution been observed, the injury could have been avoided, no recovery can be had.

As the evidence fails to show that the plaintiff in passing over the walk exercised due care to avoid the danger, the court erred in overruling the motion for a new trial, for which error the judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. CHIEF JUSTICE SCOTT, dissenting:

That cities and villages are bound to exercise reasonable care to keep streets within their corporate limits in repair and free from dangerous obstructions, is the settled law in this State. The obligation resting upon them in this regard is not less imperative than if imposed by statute.

In the case before us, the negligence charged as the ground of liability, is, the defendant city suffered snow and ice to accumulate, at the point where plaintiff fell, in such quantities as that it became dangerous to persons passing over the street, although using due care and caution. Previous to the happening of the accident there had been a fall of snow; it was not removed from the sidewalk, and in consequence of travel thereon it had formed in ridges a few inches in height, of the width of about a foot at the base, sloping from the center in either direction. There is evidence that a water conductor

from an adjoining building emptied upon an awning immediately over the sidewalk where the accident happened. A defect in the awning permitted the water from the conductor to fall upon the sidewalk below, where, freezing, it formed a cake of ice.

The obstructions complained of, were no sudden formations. They had been forming so long they must have been known to the city authorities, whose principal office was in the immediate vicinity.

The location of these obstructions was upon one of the principal streets of the city. At the time of the injury to plaintiff many persons were passing over it, going to and from the post office.

Accumulations of ice and snow on the sidewalk at this point were not common to all the streets of the city, but their dangerous character was produced to a great extent by artificial causes. Water from the conductor of the next adjoining building falling on the sidewalk, by the action of the elements, formed considerable quantities of ice. Snow had been suffered to lie upon the sidewalk until, by travel upon it, ridges had been formed. While passing over these obstructions, plaintiff, although observing due care, fell and sustained a severe, and, perhaps, permanent injury of the hip and lower part of the spine.

A municipal corporation is not bound to keep its streets entirely free from ice and snow; were this even practicable, by the utmost exertions, and the expenditure of money and labor, it would impose upon such corporations unreasonable burdens. When they have done what is reasonable in this regard they have discharged the obligation the law imposes upon them. Nor are they to be held liable for every mere accident that may happen within their corporate limits.

Where an injury results from the slippery condition of the streets, which is generally produced by the prevailing storms of the season, it has always been held there is no liability on the municipality. The rule is a reasonable one, and accords with our sense of justice. Against such conditions it is not possible to provide by any ordinary watchfulness; but where

snow and ice are suffered to accumulate in ridges or irregular heaps in particular localities on sidewalks, to such an extent as to become dangerous, and which could have been prevented by ordinary diligence of the municipal officers, the authorities, so far as I have examined them, are all to the effect the city or village will be liable to any person injured in consequence of such obstructions. *City of Chicago* v. *Smith,* 48 Ill. 107; *City of Centralia* v. *Krouse,* 64 Ill. 19; *Corydon* v. *Norwich,* 37 Conn. 414; *Cook* v. *Milwaukee,* 24 Wis. 270; *Luther* v. *Worcester,* 97 Mass. 268; *Hutchins* v. *Boston,* 97 Mass. 272; *Street* v. *Holyoke,* 105 Mass. 82; *Gilbert* v. *Roxbury,* 100 Mass. 185; *Providence* v. *Clapp,* 17 Howard, 165; *McLaughlin* v. *Corry,* 77 Penn. State R. 109.

Most of these decisions were made in reference to statutes making it the duty of cities and towns to keep their streets and highways in repair and safe for the ordinary travel, to persons using proper care. But such a duty and liability are considered to exist and obligatory upon municipal corporations without any positive statute imposing such duty and liability, as has been repeatedly held by decisions of this court. They are none the less authorities upon the exact point we are considering, viz: that unusual accumulations of snow and ice, in irregular forms or heaps, like any other obstruction. may be a defect in a street or sidewalk. It is always a question of fact, to be found from the evidence, whether such obstructions are of a dangerous character to persons observing due care for their own safety, and whether they have been negligently suffered to remain for an unreasonable time after the knowledge of their existence had come to the notice of the corporate authorities, or whether the same could have been discovered by the exercise of ordinary diligence.

The injury to plaintiff was not attributable to any slippery condition of the sidewalk, common to all the walks of the city, produced by the action of the elements; but was caused by the uneven masses of snow and ice that the city had permitted to form, and perhaps more directly by the ice-cake that had formed from the leak in the awning. The condition of the

sidewalk at that point was of considerable duration, was readily observable by all persons, and we must believe the city authorities had notice of it; the principal office was near by; it was the duty of the city to have caused the ridges of snow and ice to be leveled, and the ice-cake removed. The obstruction was confined to a single locality, and could have been removed with as little difficulty as any other temporary defect. Had it been in an unfrequented part of the city, no doubt a less degree of care would have been required on the part of the city authorities; but this was a most public place, in the vicinity of the post office, where persons were constantly passing at all hours of the day. Its dangerous character is proven beyond question, by the fact other persons had fallen there. No excuse whatever is shown for suffering the dangerous accumulations of snow and ice to remain so long. It can be attributed to no other cause than the negligent conduct of the city officers, whose business it was to attend to such matter, and for which neglect the city is responsible.

No negligence whatever is imputable to plaintiff. He had an asthmatic difficulty, which compelled him to walk slowly, and the proof shows he was observing more than ordinary care for his personal safety.

In my opinion, the conclusion reached by a majority of the court, is warranted by neither the law nor the evidence, and if adhered to it will work great injustice to a most unfortunate sufferer, and establish a most pernicious rule. It seems to me the opinion disregards not only all our former decisions, but the law applicable to such cases, as declared by courts of the highest authority in other States, and ignores, as I think, important facts found by the jury on the evidence in the case.

The judgment ought to be affirmed.