## City of East Dubuque v. John Brugger.

### Gen. No. 4,346.

1. SIDEWALK—*mere slippery condition of, does not confer cause of action.* The mere slipperiness of a sidewalk, occasioned by ice or snow, not being accumulated so as to constitute an obstruction, is not such a defect as will make the city liable for damages occasioned thereby.

· · Action on the case for personal injuries. Appeal from the Circuit Court of Jo Daviess County; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the April term, 1904. Reversed with finding of facts. Opinion filed March 8, 1905.

M. H. CLEARY, for appellant.

MATTHEWS & FRANTZEN and SHEEAN & SHEEAN, for appellee.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

Shortly after dark February 18, 1901, while appellee was on his way home from his work, he fell on a sidewalk of appellant and fractured the small bone of his right leg just above the ankle. This suit was brought to recover damages for said injury. The first count of the declaration charges that the sidewalk was in bad and unsafe repair and condition and that divers planks were loose and unfastened, by means whereof plaintiff tripped and fell. The second count charges that the walk was in a dilapidated and rotten condition with large nails sticking above the

surface of the planks, by means whereof plaintiff caught
his foot on one of said nails and fell. The third charges
that defendant suffered and permitted large quantities of
snow and ice to be and remain on the sidewalk, by means
whereof plaintiff slipped, stumbled and fell. The trial re-
sulted in a verdict and judgment for appellee for $1,000,
from which this appeal is prosecuted. There is no proof
whatever in this record that loose or unfastened boards of
the sidewalk, or its dilapidated and rotten condition, were
to any extent or to any degree responsible for appellee's
fall. If this verdict can be sustained at all it must be upon
the allegations in the declaration of nails projecting above
the sidewalk or the obstructions of snow and ice. The
proof shows the sidewalk in question was eight feet wide
and constructed of boards lying crosswise on four stringers.
A great mass of testimony was introduced at the trial by
both sides for the purpose of showing the condition of the
walk as to decay, its state of repair, etc., but as these con-
ditions in nowise contributed to appellee's injury, it is un-
necessary to discuss this evidence. At the place of the
accident, the sidewalk was opposite two vacant lots. The
day before appellee's injury, snow and sleet had fallen and
become soft, as the witnesses term it "slushy," so that
people passing along the sidewalk left footprints in it.
There was considerable travel over this sidewalk and a well-
beaten path was made near the middle of it. On the day
of the accident it became quite cold and the soft snow and
slush froze to ice. This rendered the pathway slippery
and the depressions made by footprints when the snow and
sleet were soft produced an uneven surface. Appellee
testified he was walking in the path when one foot slipped,
that he tried to steady himself with the other one but it
caught on a projecting nail-head and he was thrown down
and injured. He does not claim he saw any nail at the
time of his injury or that he had seen nails projecting in
the sidewalk at that place since September or October,
before his fall. The walk was one used by him in going to
and from his place of work twice a day since September

City of East Dubuque v. Brugger.

before the accident, and the reason given by him for testi-
fying that his foot caught on a nail was that the fall before
he had seen nails projecting above the surface of the walk,
and after he was carried from the place of his fall into a
store near by, he saw a mark on his shoe heel which he
assumed was made by catching on a nail-head. A number
of witnesses examined the sidewalk at the place where ap-
pellee received his injury the next morning, and their tes-
timony is that the walk was covered with ice and frozen
snow to a depth of from one to three inches and no nail-
heads projected above it. Besides this, it would seem from
the testimony of appellee's own witnesses that if nail-heads
did project above the surface of the boards, the snow and
ice covered them to such an extent that they could not be
seen and appellee could not have come in contact with
them. The testimony of witnesses who say they had never
seen nails projecting above the surface of the walk fixes the
time at some months before the accident and the height of
their projection at about one-quarter of an inch. Nearly
all of the witnesses, both for appellee and appellant, give
the thickness of the frozen snow and ice on the sidewalk at
from one to three inches. The proof excludes all idea that
projecting nails caused or contributed to appellee's injury,
and this leaves for consideration only the proof under the
third count of the declaration.

Appellee's counsel say in their brief and argument: "The
contention in this case is not that the injury occurred
through the slippery condition of the sidewalk alone, or the
humps and ridges alone, but because of the uneven condi-
tion of the sidewalk and the nails sticking up, together
with the ridges and humps of snow and ice." It does not
appear there was anything in the location or construction
of the walk that tended to cause unusual quantities of ice
or snow to accumulate thereon. It was eight feet wide and
most of the witnesses say level, though a few testified it
was about six inches lower on the side next to the vacant
lots than on the street side. Prior to appellee's fall there
had been snowfalls from time to time, and it is insisted by

him that these were not cleaned off, but allowed to accumulate on that sidewalk till they caused obstructions of such a character as to render the walk unsafe for travel.

It does not appear the city authorities made any efforts to remove the snow and ice from the walk in question. Travelers passing over it would beat a path in the snow. This necessarily packed some of the snow firm and tight against the sidewalk. If there were any obstructions that renderd the use of this walk unsafe it was caused in this way, as there is no proof of any snow drifting or being thrown upon the walk other than what naturally fell there. The proof clearly shows the frozen snow and ice on the walk was from one to three inches thick, and that its rough and uneven surface was caused by footprints made while it was in the slushy condition, followed by sudden cold weather freezing it into ice.

Our Supreme Court said in City of Chicago v. McGiven, 78 Ill. 347: " The mere slipperiness of a sidewalk, occasioned by ice or snow, not being accumulated so as to constitute an obstruction, is not such a defect as will make the city liable for damages occasioned thereby." One to three inches of snow and slush such as is shown by the evidence in this case does not in our judgment constitute an obstruction. It seems clear to us from the evidence that the only condition that rendered the walk unsafe was " slipperiness," which the Supreme Court says is not an obstruction.

City of Chicago v. McDonald, 111 Ill. App. 436, is a case involving the same principles of law as are here involved. What was complained of as an obstruction in that case was ice near the center of the sidewalk six inches thick, three feet wide and highest in the middle. The Appellate Court held the city was not liable to the plaintiff for injuries sustained as the result of a fall caused by said ice, and used the following language, which we think very appropriate to this case : " The condition of the sidewalk in question as described by plaintiff's witnesses, is a common incident of an Illinois winter. When snow falls, the passers-by make a path usually near the center of the walk, the

snow is trodden hard and more or less smooth and is frozen into ice, and remains, when the snow which has not been trampled upon is swept, or blown, or melts away."

In City of Quincy v. Barker, 81 Ill. 300, the court say: "It is utterly impracticable for a city or incorporated town at all seasons of the year to keep streets and sidewalks free and clear from ice; and should the incorporation be held liable for every accident that might occur from an obstruction of this character, the result might be to bankrupt every incorporated town in the state."

Cases similar in principles and some of them very similar in their facts will be found in Village of Gibson v. Johnson, 4 Ill. App. 292; City of Aurora v. Parks, 21 Ill. App. 461; Mareck v. Chicago, 89 Ill. App. 358, and Metzger v. Chicago, 103 Ill. App. 605. To our minds the evidence wholly fails to show a cause of action and we see no good purpose that could be served by remanding the cause.

The judgment is reversed.

*Reversed with finding of facts.*

Finding of facts, to be incorporated in the judgment of the court.

We find as facts from the evidence, that appellee's fall was not caused by the sidewalk being out of repair, dilapidated or rotten, or by its planks being loose and unfastened, or by a nail or nails projecting above the boards, nor by an obstruction of snow and ice, but was caused by the slippery condition of the walk resulting from the weather turning suddenly cold and freezing the soft snow and slush on the sidewalk into ice, and that appellant was not guilty of any of the negligence as charged in the declaration.