Harry Pearson, Appellant, v. City of Chicago, Appellee.

Gen. No. 39,120.

Opinion

filed May 19, 1937.

BEN W. GOLDMAN and NATHAN ALLEN, both of Chicago, for appellant; DANIEL V. GALLERY, of Chicago, of counsel.

BARNET HODES, Corporation Counsel, QUIN O'BRIEN, ADAM E. PATTERSON, A. M. SMIETANKA and PATRICK T. HARRINGTON, Assistant Corporation Counsel, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

Plaintiff appeals from a judgment in the superior court entered upon instruction to the jury by the court to return a verdict for the defendant of not guilty.

This was an action at law brought by the plaintiff to recover damages for injuries sustained on December 25, 1934, by reason of a fall resulting from an accumulation of ice and snow in a public alley in the city of Chicago. Notice of this action, as required by statute, was given to and received by the city of Chicago.

The alley has a cement pavement and runs in a northerly and southerly direction, and is bound on the west by Paulina street and on the east by Clark street, and on the north by Thorndale avenue, thus forming an ell, and was in the possession and control of the city of Chicago for the use of the public.

On December 25, 1934, the plaintiff was in the tailoring and repairing business, and on that date delivered clothing to a customer living on the west side of Chicago. In making delivery he used an automobile owned by him for that purpose, which he stored in a public garage located at 5906 North Clark street, in Chicago. Upon his return the plaintiff drove the automobile into the alley from Paulina street into the garage, through the rear door, at the above number—5906 N. Clark street. After leaving his automobile he went through the rear door of the garage to the alley and started south to his own rear entrance of the building that he occupied as a tailor and resident, which was about 60 feet from the rear door of the garage, and known as No. 5904 Clark street, Chicago. Near the west wall of the garage was a level path. Ten feet south of the

garage door was erected a telephone pole from 12 to 14 inches in diameter and about a foot from the wall, so that the pole extended from 24 to 26 inches into the alley. In walking south in the alley plaintiff was obliged to turn at this point toward the center of the alley. On December 25, 1934, there was 7.1 inches of snow on the level. Traffic in the alley was heavy, and was made up of milk trucks, delivery wagons and motor cars. These vehicles passing through the snow and slush caused ruts, ridges and hillocks of a depth of from 4 to 7 inches. The plaintiff tried to avoid the ruts for the reason—as he testified—that it would be hard to release his foot if he slipped into one of the ruts, and that he was careful, but his foot slipped into a rut and he was thrown down. The plaintiff was unable to arise, and crawled to the rear entrance of his home. His cries brought his wife and daughter and they carried him into his home.

Plaintiff was injured, and it appears from the doctor's testimony that the left femur was fractured at the hip, that the fracture did not respond to surgical treatment, and did not knit, so that the neck of the femur is gone. For the remainder of his life the plaintiff is obliged to wear a splint, consisting of two rods running from his body to the ground. At the top of the splint is a seat on which his buttock rests when walking.

The defendant contends that the city of Chicago is only bound to use reasonable care to keep its alleys reasonably safe for the amount and kind of travel which may fairly be expected in them, and that the degree of care to be exercised by the city in the matter of keeping its alleys free from snow and ice for the benefit of pedestrians is not as great as that to be exercised by the city of Chicago in the matter of keeping its streets and sidewalks free from obstructions to pedestrians caused by the accumulation of snow and

ice, and cite in support of its position the case of *Boender v. City of Harvey*, 251 Ill. 228, in which the court says:

"No arbitrary rule can be laid down as to defects in highways or streets for which municipalities will be liable or as to the degree of care required of the person injured. Municipal corporations are not insurers against accidents. The object to be secured is reasonable safety for travel, considering the amount and kind of travel which may fairly be expected upon the particular road or street. A highway in the country need not be of the same character as a street in a large city."

The rule of law governing in actions of this kind is stated by the court in the case of *Graham v. City of Chicago*, 346 Ill. 638, wherein the court in its opinion considered the decisions of various jurisdictions upon the question of liability of the city for injuries caused by snow and ice such as we have in the instant case. We believe it is illuminating to quote from this decision the statement of the court regarding the various authorities which were considered in reaching a conclusion in that case. The court said:

"It is claimed that the defendant city was not guilty of any negligence under the law in permitting the ice to remain on the sidewalk; that a city is under no obligation to remove ice from sidewalks in the winter time unless it had formed in ridges and hillocks, so as to be in the nature of an obstruction to pedestrians, and that it is immaterial whether the slipperiness was caused by natural or artificial means. What, if any, duty devolves upon a city to remove ice from its sidewalks is a subject of a great variety of opinions, and because of this divergence of views a number of different and contradictory statements of the law have been laid down in the various jurisdictions. However, there is one rule which is almost universal. That is, a city

is not liable for injuries resulting from the general slipperiness of its streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes. (13 R. C. L. 'Highways,' 408; *Spillane v. Fitchburg*, 177 Mass. 87; *Reedy v. St. Louis Brewing Ass'n*, 161 Mo. 523, 53 L. R. A. 805.) A municipality is bound only to use reasonable care to keep its sidewalks reasonably safe for the amount and kind of travel which may fairly be expected upon them. (*Boender v. City of Harvey*, 251 Ill. 228.) In view of the generality of ice and snow in the winter time, the doctrine has become quite prevalent that it would be an unreasonable requirement to compel a municipality to remove them from walks and streets. In *Chase v. Cleveland*, 44 Ohio St. 505, the court said: 'It is not unreasonable to assume that there were hundreds of similar dangerous places in the city of Cleveland at the time of the accident to plaintiff. To effectually provide against danger from this source would require a large special force, involving enormous expense.' While this rule has assumed approximate universality, it has nevertheless been made subject to various exceptions. For example, it is sometimes said that it is immaterial whether the slipperiness was caused by natural or artificial means. (43 Corpus Juris, 1022; *Nason v. Boston*, 14 Allen, (Mass.) 508; *Henkes v. Minneapolis*, 42 Minn. 530.) In other jurisdictions the exemption exists only where it was caused by natural means. (13 R. C. L. 'Highways,' 413; *Evans v. Concordia*, 74 Kan. 70; *Reedy v. St. Louis Brewing Ass'n, supra; Huston v. Council Bluffs*, 101 Iowa, 33, 36 L. R. A. 211.) Likewise, it has been held that a city is not liable if the ice was merely smooth and slippery (*Evans v. Concordia, supra; Anthony v. Glens Falls*, 88 N. Y. Sup. 536; *Cook v. Milwaukee*, 24 Wis. 270) ; yet liability may attach if it were in ridges or hillocks. *Evans v. Concordia, supra; Luther v. City of Wor-*

*cester,* 97 Mass. 268; *Jones v. City of Troy,* 127 N. Y. 671.

.  .  .  .

"The decisions in the various jurisdictions upon this question of liability are so varied and numerous that it would be impracticable for us to attempt to analyze them or to harmonize them, but we have reached the conclusion that the reason which underlies the rule exempting cities from liability because of damages from slippery ice is that of necessity. It is grounded on the fact that it is unreasonable to compel a city to expend the money and perform the labor necessary to keep its walks reasonably free from ice and snow during winter months. Especially is it true in this latitude. But the rule must be predicated on the formation of ice from natural causes, for it would be neither unreasonable, impracticable nor expensive, as a general proposition, to compel the removal of ice from sidewalks which was produced by artificial causes. It is the generality of a situation resulting from natural causes that gives rise to the rule."

The facts are not clear as to how long the condition complained of existed in the alley, so that from the point of time the court could not consider that the city had notice of this condition. This of itself is not conclusive as to the liability of the city. It must appear from the evidence that plaintiff was in the exercise of due care for his own safety. The facts clearly indicate that at the time this accident happened he was familiar with and had notice before that time of the condition of the alley; that he operated his automobile through this alley when using it for the purposes of his business; that after using the car he would drive through the alley to the entrance of the garage in which he stored his car.

While the defendant by making a motion at the close of plaintiff's case admitted all the facts and such rea-

sonable inference as might be drawn therefrom, it urges that from the evidence it does not appear that the plaintiff was in the exercise of due care, and that the plaintiff in using the alley after knowledge of its condition, which it is alleged contributed to the accident to plaintiff, was chargeable with such want of care as to bar recovery.

In the case of the *City of Quincy v. Barker,* 81 Ill. 300, which was an action against the city of Quincy for injuries sustained by an alleged defect in a sidewalk where the accident occurred, the court in referring to the rule applicable to actions of this character, said:

"In *The City of Aurora v. Pulfer,* 56 Ill. 270, it was held that the obstructions or defects in the streets or sidewalks of a city, to make the corporation liable, must be of such a nature that they are in themselves dangerous, or such that a person exercising ordinary prudence can not avoid danger or injury in passing them; in general, such defects as can not be readily detected. . . .

"If it be conceded that the ice upon the sidewalk was an obstruction, it was a defect in the walk that could be readily detected; it was in the center of the walk and in plain view, and could not escape the attention of a pedestrian, unless he was walking in a hasty and reckless manner. Can it be said that the ice upon the walk was such a defect that the plaintiff, by the exercise of ordinary care, could not have avoided the danger? We apprehend not. If he had given that attention to the walk that is required of a prudent man, he, no doubt, would have seen the ice, and then he could have passed on either side of it in safety, as the walk was sufficiently wide and safe for that purpose.

"Had the plaintiff been unacquainted with the walk, and been passing over it in the night time, when the obstruction could not have been seen, then a different question would arise; . . .

"It is utterly impracticable for a city or incorporated town at all seasons of the year to keep streets and sidewalks free and clear from ice; and should the incorporation be held liable for every accident that might occur from an obstruction of this character, the result might be to bankrupt every incorporated town in the State."

From this decision, however, Mr. Chief Justice Scott of the Supreme Court dissented.

The fact that the plaintiff was familiar with the condition of the alley and used it as he did, would, in our opinion, be such want of care as to preclude a recovery.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and HALL, J., concur.