Robert Strappelli, Minor, by Ernest Strappelli, His Father and Next Friend, Appellee, v. City of Chicago et al.
  Appeal of City of Chicago, Appellant.

Gen. No. 39,873.

HALL, J., dissenting.

Opinion filed May 11, 1938.

BARNET HODES, Corporation Counsel, for appellant; ALEXANDER J. RESA and LIONEL J. BERC, Assistant Corporation Counsel, of counsel.

BARASA, RINELLA & BARASA, of Chicago, for appellee; JOSEPH BARBERA and BERNARD BARASA, JR., of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Defendant, city of Chicago, brings this appeal from a judgment entered in the circuit court upon the verdict of a jury in favor of plaintiff for $5,000, for personal injuries alleged to have been sustained on January 8, 1936, as a result of the alleged negligence of the defendant.

It is alleged that the accident occurred about 3:30 o'clock in the afternoon on the date aforesaid on Western avenue just north of Cornelia avenue in the city of Chicago where a safety island or concrete platform is located for the convenience of persons waiting for or boarding or leaving the street cars which operate on Western avenue.

It is further alleged that on the day of the accident plaintiff who at that time was a student at the Lane

Technical High School, went to the safety island which is located directly in front of the main entrance of said school to wait for and board a southbound Western avenue street car, together with other students; that one street car and possibly two passed by without taking any passengers and that when the next car came the students moved toward its rear entrance; that because of defendant's negligence in failing to keep the safety island free from ice and snow, and in allowing the same to remain in a dangerous condition, the plaintiff in attempting to board the street car slipped under it and the car moved a few feet after plaintiff was under it; that plaintiff sustained injuries which necessitated the amputation of the middle toes of his left foot.

No point is raised as to the pleadings.

· Plaintiff's theory of the case is that the accident in question was caused by the negligence of the defendant in failing to keep the safety island free from ice and snow and allowing the same to remain in a dangerous, icy and slippery condition and allowing dangerous hillocks and ridges of ice and snow to form and remain on said safety island, which amounted to an obstruction to travel.

Defendant's theory of the case is that the condition of the island was the result of common and usual conditions caused by winter weather in Chicago, there having been considerable snowfall and the snow having been trampled by pedestrians and thereafter frozen; that the condition of the safety island and the obligation to remedy it is not shown to have existed for more than 48 hours prior to plaintiff's accident and that therefore the city was not chargeable either with notice of the existence of the condition or with a liability for not having remedied it; that plaintiff, a young man over the age of 14 years was therefore under an obligation to exercise the same degree of care

and prudence for his own safety as might be expected of an adult person under the same circumstances; that plaintiff was guilty of such negligence as would bar recovery.

There does not seem to be any dispute as to the facts. No error is assigned as to instructions given or refused.

Defendant agrees there is no issue on this appeal so far as the accident, the injuries, or the amount of recovery are concerned. There is some conflict in the evidence, however, as to whether the safety island was covered with ice and snow and how rough it was. The evidence appears to show that the rough condition of the island had existed for a period of 48 hours prior to the accident.

On January 6th, two days before the accident, there was a considerable fall of snow in Chicago. On January 5th at 7 p. m., according to the weather report, snow was on the ground in Chicago to a depth of 0.8 of an inch and on January 6th at the same time the depth was 4.0 inches and that on January 8th, the date of the accident, the depth had increased to 4.1 inches.

As to the condition of the island, the plaintiff testified that it was covered with ice and snow and that it was very lumpy, full of ridges; that on the eastern edge of the safety island there was a slope of solid ice from the top of the island right down to the west rail of the southbound Western avenue street car tracks, it extended all the way along the eastern edge of the safety island; that the whole island was covered with ice and snow which ranged anywhere from one to four inches; that the lumps were four inches high in some places and they sloped down to one inch in between; that he slipped on these large bumps of ice that covered the entire safety island. From 25 to 40 passengers were on the safety island awaiting to board said street car.

Six other witnesses produced by plaintiff testified in substance in corroboration of plaintiff's statements. At the end of plaintiff's evidence one of the defendants at the trial, Chicago Surface Lines, made a motion to instruct the jury to return a verdict of not guilty as to it which was granted leaving city of Chicago the sole defendant, and we believe the preponderance of the evidence shows as plaintiff maintains. We further believe the evidence sustains plaintiff's contention as to the condition of the safety island.

It is contended by the City and many cases are cited in support of the proposition that a municipality is not liable for damages sustained by the slippery, or icy condition of the streets caused by a fall of snow. Some of the cases held that the slippery condition being the result of natural causes, the City should not be held liable and that it would be financially impossible for the City to have sufficient funds on hand to pay the expense of having such snow removed and, for that reason, the municipalities were not liable. In this case, however, a somewhat different situation is presented. The so-called safety island was installed by the City near the middle of the street. It was 80 feet long, 4 inches high and 4 feet wide. It was intended to be used and was used as the only means of access to the street car which plaintiff intended to board. When the street car stopped the entrance thereto was opposite this island and it was the only means of ingress and egress to and from said street car and other cars. The passengers boarding the street car were compelled to stand upon the safety island. Said safety island was opposite a large public manual training school. In addition to the usual traffic, this island was used by several thousand students of said high school as a means of boarding or getting off the street cars. The parties using it were not only invited to use this sole means of access to the street cars, but were compelled to use it in order to enter said cars.

The duty of the City to use reasonable care in maintaining public streets and sidewalks in a safe condition should be and is commensurate with the danger involved, and the care of which the law speaks should be sufficient to protect and prevent injury to the citizen when the latter is in the exercise of due care for his own safety. Ordinary care must necessarily be such care as relates to the facts and circumstances which exist at the time of its required use. The purpose of compelling by rule of law the observance of such ordinary care by the City in the control and use of its various public places, such as streets, sidewalks, alleys, etc., is for the protection of its citizens from danger and this duty on the part of the City is a continuing one. When the evidence shows nonobservance of this duty in relation to a citizen who is in the exercise of ordinary care for his or her own safety, then the liability becomes fixed as to said municipality. Of course, just what facts and circumstances are required to fix the liability of the City and just what facts and circumstances would free them from liability as to the citizen injured or damaged, and whether the acts of such citizen may have been a contributing cause of the accident, are usually left for the jury to determine.

In *Mareck v. City of Chicago,* 89 Ill. App. 358, the court said: "It is true, as argued, that mere slipperiness of a sidewalk, occasioned by ice or snow, not being accumulated so as to constitute an obstruction, is not such a defect as will make the city liable for damages occasioned thereby. . . .

"But it is also true that an obstruction in a sidewalk caused by an accumulation of snow or ice in uneven ridges or hillocks, so as to render passage dangerous, if negligently permitted to remain, may render a city liable for injury thereby caused."

In the case of *Eppley v. City of Chicago,* 221 Ill. App. 111, the court said:

"We think the controlling principle is well stated in *Mareck v. City of Chicago,* 89 Ill. App. 358, as follows:

" 'It is true, as argued, that mere slipperiness of a sidewalk, occasioned by ice or snow, not being accumulated so as to constitute an obstruction, is not such a defect as will make the city liable for damages occasioned thereby. *City of Chicago v. McGiven,* 78 Ill. 347; *City of Quincy v. Barker,* 81 Ill. 300; 2 Dillon on Municipal Corp. (4th Ed.), sec. 1006.

" 'But it is also true that an obstruction in a sidewalk caused by an accumulation of snow or ice in uneven ridges or hillocks, so as to render passage dangerous if negligently permitted to remain, may render a city liable for injury thereby caused. *City of Chicago v. McGiven,* 78 Ill. 347; *City of Quincy v. Barker,* 81 Ill. 300; *Village of Gibson v. Johnson,* 4 Ill. App. 288; *City of Macomb v. Smithers,* 6 Ill. 300; *Village of Macomb v. Smithers,* 6 Ill. App. 470; *City of Aurora v. Parks,* 21 Ill. App. 459; *Luther v. City of Worcester,* 97 Mass. 268; *Morse v. City of Boston,* 109 Mass. 446; *Cook v. City of Milwaukee,* 24 Wis. 270; *Paulson v. Town of Pelican,* 79 Wis. 445; *Thompson v. Village of Saratoga Springs,* 47 N. Y. Supp. 1033; *McLaughlin v. Corry,* 77 Pa. St. 109; *Wyman v. City of Philadelphia,* 175 Pa. St. 117.

" 'The general rule is concisely stated by the Pennsylvania court:

" ' "A municipality cannot prevent the general slipperiness of its streets, caused by snow and ice during the winter, but it can prevent such accumulation thereof in the shape of ridges and hills, as render their passage dangerous." '

" 'In some of the decisions cited the test seems to be as to whether the condition is the result of natural causes, depositing the snow and causing the ice, or the result of artificial causes in changing the natural deposit into ridges and hillocks, or the result of struc-

tural defects in the walk upon which the deposit of snow or ice is lodged. In other cases, it would seem that the criterion adopted is as to whether the uneven accumulation of snow or ice amounts to an obstruction to travel, without any very definite rule by which to determine what is or is not an obstruction — a question of fact necessarily within the province of a jury. But all authorities agree that while mere slipperiness, caused by snow and ice, will not of itself impose liability, yet uneven ridges or hillocks of snow or ice, when they amount to an obstruction to travel, and are negligently permitted to remain, may impose liability.' ''

There have been many other decisions handed down by the courts as to the liability of municipalities relative to icy and slippery conditions on public streets. In the case of *Graham v. City of Chicago,* 346 Ill. 638, the court in passing upon whether or not the city was liable under certain circumstances, after citing numerous cases on page 641, said: ''However, there is one rule which is almost universal. That is, a city is not liable for injuries resulting from the general slipperiness of its streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes.

'' . . .

''The Appellate Courts of this State do not agree as to when a municipality is liable, and the Supreme Court cases cited by counsel are not in point. In *City of Quincy v. Barker,* 81 Ill. 300, plaintiff received injuries through slipping upon a ridge of ice in the center of a sidewalk. He recovered a judgment in the trial court, but the judgment was reversed, not on the ground that a city is never liable for damages occasioned by slippery ice upon sidewalks, but because it appeared the ice was in the center of the walk and there was *ample space* left on either side for plaintiff

to have passed in the exercise of reasonable care. The court said: 'It will be remembered that this accident did not occur in the night time, when the plaintiff could not see the condition of the walk, but in broad daylight.'

"The following language appears in *City of Chicago v. McGiven*, 78 Ill. 347: 'The mere slipperiness of a sidewalk occasioned by ice or snow, not being accumulated so as to constitute an obstruction, is not such a defect as will make the city liable for damages occasioned thereby.' The supporting cases cited are from other jurisdictions and simply announce the general rule above stated. It may be said that the language thus employed was not at all necessary to a decision of the case, inasmuch as the declaration was not predicated upon any averment relative to ice." Continuing the court said:

"The decisions in the various jurisdictions upon this question of liability are so varied and numerous that it would be impracticable for us to attempt to analyze them or to harmonize them, but we have reached the conclusion that the reason which underlies the rule exempting cities from liability because of damages from slippery ice is that of necessity. It is grounded on the fact that it is unreasonable to compel a city to expend the money and perform the labor necessary to keep its walks reasonably free from ice and snow during winter months. Especially is it true in this latitude. But the rule must be predicated on the formation of ice from natural causes, for it would be neither unreasonable, impracticable nor expensive, as a general proposition, to compel the removal of ice from sidewalks which was produced by artificial causes. *It is the generality of a situation resulting from natural causes that gives rise to the rule. Without that generality there would be no reason for the rule. There is no more cause for excusing a city from liability where*

*damages have accrued from ice which has formed on a walk in an unnatural way, than there is to excuse it from damages when a walk has been permitted to become defective from any other cause."*

The rule of law which ordinarily would be applicable to streets and sidewalks would not apply in this case for the reason as above stated it lacks "the generality of a situation resulting from natural causes." Ordinarily a citizen would have the opportunity of picking out certain streets or certain sidewalks or certain parts thereof upon which to ride or walk, and such citizen would be required to use ordinary care in making such selection and in the use of such streets and sidewalks, but that is not the situation here.

The instant case pertains to the condition of a concrete platform or safety island which had been constructed by the city and was raised several inches from the street level to insure the safety of the persons standing thereon and was the sole means of boarding or alighting from street cars. This platform was used by the students attending the high school heretofore mentioned when using the Western avenue street car. To permit said so-called safety platform to remain covered with ice and snow, in an irregular formation of lumps and ridges, for such length of time, ranging from 48 hours to 14 days was negligence. The evidence further shows that this condition was caused by the snow having been permitted to remain there and in the process of thawing and freezing, the lumps, hillocks and ridges were formed and remained on said safety island.

Referring again to the case of *Graham v. City of Chicago,* 346 Ill. 638, in speaking of the nonliability of the city and under what conditions it may be excused, the court said: ". . . it would be neither unreasonable, impracticable nor expensive, as a general proposition, to compel the removal of ice from the sidewalks which

was produced by artificial causes. It is the generality of a situation resulting from natural causes that gives rise to the rule. Without that generality there would be no reason for the rule. There is no more cause for excusing a city from liability where damages have accrued from ice which has formed on a walk in an unnatural way, than there is to excuse it from damages when a walk has been permitted to become defective from any other cause.''

There is no ''generality of the situation'' in this case. No bankruptcy of the city need be feared because of a special and isolated case of limited area such as this one. No proof was offered as to the number of ''islands'' in the city but they are comparatively few.

It is further contended by defendant, city of Chicago, that plaintiff was guilty of contributory negligence. Just what acts are relied upon as being the contributing cause is not apparent. Plaintiff used the safety island provided by the City and he had neither choice, option nor opportunity to do other than he did if he desired to use the street cars running on said street, and plaintiff had to use the island in the condition in which he found it, said condition having been caused by the negligence of the City in permitting the ice, hillocks and bumps to remain on said island.

We do not think the evidence shows any contributory negligence on plaintiff's part and we believe there was no prejudicial error committed in the trial and the jury was fully justified in finding the defendant guilty.

For the reasons herein given the judgment of the circuit court is hereby affirmed.

*Judgment affirmed.*

Hebel, P. J., concurs.

Hall, J., dissenting: I cannot agree with the majority opinion and conclusion in this case. It is a matter of public knowledge of which this and other local

courts must take judicial notice, that Western avenue, the street upon which the accident happened, is a recently widened street, that the widening was done for the purpose of facilitating the movement of automobile traffic, and that the so-called safety islands erected at intersections along the street, adjacent to street car tracks, were placed there for the purpose of protecting persons who propose to become passengers on street cars, or to alight therefrom, from the danger of automobile traffic, and for no other purpose. It is also a matter of public knowledge that there are a great many similar streets in the city of Chicago with similar raised platforms at intersections along the entire length of such streets, and that in every case these platforms are but a few inches above the level of the streets. The writer of the majority opinion seems to stress the fact that the platform in question is adjacent to a school where a great many students attend, and that an additional duty was therefore, imposed upon the City. This and other local courts must also take judicial notice of the fact that there are thousands of places in the city of Chicago where school children and employees of industrial plants and mercantile institutions, in great numbers, board and alight from street cars at street intersections. If the duty imposed by the majority opinion is to be observed by the city of Chicago, then it follows that under situations and conditions similar to those shown to have existed here, it will become the duty of the city of Chicago at each of these intersections to keep the point at which passengers board or alight from street cars, free from snow and ice, whether the place of alighting from or boarding street cars is raised or not. In my opinion, this is imposing a duty upon the city of Chicago, by judicial fiat, which, under its present or future financial condition, it cannot perform.